UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JANET MCCALL FLEMING, | : | Civil Action |
| INDIVIDUALLY AND AS | : | |
| ADMINISTRATRIX OF THE ESTATE | : | Case No. _____ |
| OF THOMAS C. FLEMING, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GEICO GENERAL INSURANCE | : | |
| COMPANY AND GEICO INDEMNITY | : | |
| COMPANY, | : | |
| | : | |
| Defendants. | : | April 10, 2015 |

## COMPLAINT

Plaintiff Janet McCall Fleming, for her Complaint against Defendants GEICO

General Insurance Company and GEICO Indemnity Company (jointly referred to herein

as "GEICO"), states as follows:

## NATURE OF THE ACTION

1.     This is an action to recover insurance proceeds and for other damages

resulting from GEICO's intentional failure to acknowledge and honor contractual

obligations.  The Plaintiff maintains this action in her capacity as the subrogee of the

rights of Gregory Dionisio, against whom she obtained a judgment in a lawsuit seeking

damages as a result of a motor vehicle accident in which Plaintiff's husband was killed.

2.     Notwithstanding its obligations to its insured, and despite knowledge that

its failure to do so would expose its insured to significant financial loss, GEICO failed to

pay Plaintiff available insurance proceeds prior to trial in the underlying lawsuit, as a

result of which Gregory Dionisio became liable for a judgment well in excess of the insured coverage limits.

## PARTIES

3.     Plaintiff Janet McCall Fleming is an individual residing in Wilton, Connecticut.  At all times relevant to this Complaint, Plaintiff has maintained her domicile in the State of Connecticut and has been a citizen of the State of Connecticut.

4.     Defendant GEICO General Insurance Company is a foreign corporation organized and existing under the laws of the State of Maryland, with its principal place of business located in Chevy Chase, Maryland and/or Washington, D.C.

5.     Defendant GEICO Indemnity Company is a foreign corporation organized and existing under the laws of the State of Maryland, with its principal place of business located in Chevy Chase, Maryland and/or Washington, D.C.

## JURISDICTION AND VENUE

6.     This Court has original jurisdiction over this action pursuant to 28 U.SC. § 1332 in that complete diversity of citizenship exists between all parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.     This Court has personal jurisdiction over the Defendants, and venue is proper in this District under 28 U.S.C. § 1391(b), because the Defendants transact business in this District and the wrongful acts complained of occurred in this District.

## STATEMENT OF FACTS

**A.     The GEICO Entities**

8.      At all times relevant to this Complaint, GEICO was licensed to transact the business of insurance in the State of Connecticut.

9.      At all times relevant to this Complaint, GEICO was, and continues to be, engaged in the business of underwriting and issuing contracts of insurance, including, but not limited to, automobile, homeowners, and umbrella insurance policies, to residents of the State of Connecticut.

10.     On information and belief, at all times relevant to this Complaint, Defendants GEICO General Insurance Company and GEICO Indemnity Company were subsidiaries of Government Employees Insurance Company and conducted business operations in conjunction with numerous other affiliated Government Employees Insurance Company subsidiary companies (including GEICO Casualty Company, GEICO Advantage Insurance Company, GEICO Choice Insurance Company, GEICO Secure Insurance Company, and GEICO County Mutual Insurance Company) operating under the trade name "GEICO."

11.     On information and belief, at all times relevant to this Complaint, Defendants GEICO General Insurance Company and GEICO Indemnity Company and the other affiliated GEICO entities referenced in Paragraph 10, above, marketed, issued, and administered automobile, homeowners, and umbrella insurance in various States throughout the country.

12.     On information and belief, at all times relevant to this Complaint,

Defendants GEICO General Insurance Company and GEICO Indemnity Company and

the other affiliated GEICO entities referenced in Paragraph 10, above, operated a

coordinated, company-wide, systematic, and uniform system of claims-management

practices and procedures, and operated as a single, integrated enterprise for purposes

of claims administration, adjustment, and management.


**B.     Insurance Coverage Available to Gregory Dionisio**

13.     Gregory Dionisio is the son of John A. Dionisio ("John Dionisio") and

Maryann Beverly Dionisio ("Maryann Dionisio").

**The Father's New York Auto Policy**

14.     On or about March 28, 2009, in consideration of a premium specified in

the policy, Defendant GEICO General Insurance Company issued to John Dionisio a

New York family automobile insurance policy bearing Policy No. 1140-06-05-08 (the

"Father's New York Auto Policy").  A true and correct copy of the Father's New York

Auto Policy's Declarations provision is attached hereto and incorporated by reference

herein as Exhibit A.

15.     At all times relevant to this Complaint, Gregory Dionisio has qualified as

an insured under the Father's New York Auto Policy.

16.     Pursuant to the Father's New York Auto Policy, GEICO agreed that,

among other things, it would pay on behalf of any qualified insured under the policy all

sums for which the qualified insured became legally obligated to pay as damages

because of bodily injury or property damage, caused by an accident and resulting from the ownership, maintenance or use of an owned or a non-owned vehicle.

17.     The limit of liability under the Father's New York Auto Policy was $300,000.00 bodily injury liability each person / each occurrence (or each accident).

18.     The policy period under the Father's New York Auto Policy was from April 1, 2009 to October 1, 2009.

19.     John Dionisio and/or Gregory Dionisio have complied with all of the terms, conditions precedent, obligations and provisions contained in the Father's New York Auto Policy, including the payment of premiums and notice, thereby entitling John Dionisio and any other qualified insured(s), including, but not limited to, Gregory Dionisio, to the full benefit of the insurance provided by the Father's New York Auto Policy.

**The Father's Umbrella Policy**

20.     Sometime on or before June 4, 2009, in consideration of a premium specified in the policy, Defendant GEICO General Insurance Company issued to John Dionisio a personal umbrella policy bearing Policy No. P 6103427 (the "Father's Umbrella Policy").  A true and correct copy of the Father's Umbrella Policy is attached hereto and incorporated by reference herein as Exhibit B.

21.     At all times relevant to this Complaint, Gregory Dionisio has qualified as an insured under the Father's Umbrella Policy.

22.     Pursuant to the Father's Umbrella Policy, GEICO agreed that, among other things, it would pay on behalf of any qualified insured under the policy all sums for which the qualified insured became legally obligated to pay as damages because of bodily injury or property damage, caused by an accident and resulting from the ownership, maintenance or use of an owned or a non-owned vehicle.

23.     The limit of liability under the Father's Umbrella Policy was $1,000,000.00 bodily injury liability for each person / each occurrence (or each accident).

24.     The policy period under the Father's Umbrella Policy was from June 4, 2009 to June 4, 2010.

25.     John Dionisio and/or Gregory Dionisio have complied with all of the terms, conditions precedent, obligations and provisions contained in the Father's Umbrella Policy, including the payment of premiums and notice, thereby entitling John Dionisio and any other qualified insured(s), including, but not limited to, Gregory Dionisio, to the full benefit of the insurance provided by the Father's Umbrella Policy.

**The Mother's Connecticut Auto Policy**

26.     On or about April 9, 2009, in consideration of a premium specified in the policy, GEICO Indemnity Company issued to Maryann Dionisio a Connecticut family automobile insurance policy bearing Policy No. 4079-17-12-54 (the "Mother's Connecticut Auto Policy").  A true and correct copy of the Mother's Connecticut Auto Policy is attached hereto and incorporated by reference herein as Exhibit C.

27.     At all times relevant to this Complaint, Gregory Dionisio has qualified as an insured under the Mother's Connecticut Auto Policy.

28.     Pursuant to the Mother's Connecticut Auto Policy, GEICO agreed that, among other things, it would pay on behalf of any qualified insured under the policy all sums for which said qualified insured became legally obligated to pay as damages because of bodily injury or property damage, caused by an accident and resulting from the ownership, maintenance or use of an owned or a non-owned vehicle.

29.     The limit of liability under the Mother's Connecticut Auto Policy was $250,000.00 bodily injury liability each person / $500,000.00 each occurrence (or each accident).

30.     The policy period under the Mother's Connecticut Auto Policy was from April 25, 2009 to October 25, 2009.

31.     Maryann Dionisio and/or Gregory Dionisio have complied with all of the terms, conditions precedent, obligations and provisions contained in the Mother's Connecticut Auto Policy, including the payment of premiums and notice, thereby entitling Maryann Dionisio and any other qualified insured(s), including, but not limited to, Gregory Dionisio, to the full benefit of the insurance provided by the Mother's Connecticut Auto Policy.

**The Son's Connecticut Auto Policy**

32.     On or about April 20, 2009, in consideration of a premium specified in the policy, GEICO Indemnity Company issued to Gregory Dionisio a Connecticut family automobile insurance policy bearing Policy No. 4131-51-55-97 (the "Son's Connecticut Auto Policy").  A true and correct copy of the Son's Connecticut Auto Policy is attached hereto and incorporated by reference herein as Exhibit D.

33.     At all times relevant to this Complaint, Gregory Dionisio has qualified as an insured under the Son's Connecticut Auto Policy.

34.     Pursuant to the Son's Connecticut Auto Policy, GEICO agreed that, among other things, it would pay on behalf of any qualified insured under the policy all sums for which said qualified insured became legally obligated to pay as damages because of bodily injury or property damage, caused by an accident and resulting from the ownership, maintenance or use of an owned or a non-owned vehicle.

35.     The limit of liability under the Son's Connecticut Auto Policy was $20,000.00 bodily injury liability each person / $40,000.00 each occurrence (or each accident).

36.     The policy period under the Son's Connecticut Auto Policy rendered the policy effective on May 28, 2009.

37.     On information and belief, Gregory Dionisio has complied with all of the terms, conditions precedent, obligations and provisions contained in the Son's Connecticut Auto Policy, including the payment of premiums and notice, thereby entitling him and any other qualified insured(s) to the full benefit of the insurance provided by the Son's Connecticut Auto Policy.

38.     As of July 5, 2009, the amount of insurance coverage afforded to Gregory Dionisio as an insured under the Father's New York Auto Policy, the Father's Umbrella Policy, the Mother's Connecticut Auto Policy, and the Son's Connecticut Auto Policy (collectively, the "GEICO Policies") totaled $1,570,000.00.

8

**C.      The Wrongful Death Action**

39.      On July 5, 2009, while in an intoxicated state, Gregory Dionisio operated an automobile that collided with a motorcycle operated by Plaintiff's husband (Thomas C. Fleming), as a result of which Mr. Fleming died (the "Fatal Collision").

40.      Following her husband's death, Plaintiff was appointed Administratrix of the Estate of Thomas C. Fleming, and continues to act in that capacity.

41.      On or about October 20, 2009, Plaintiff commenced a wrongful death action against Gregory Dionisio and John Dionisio for the losses she sustained (both in her individual capacity and as Administratrix of the Estate of Thomas C. Fleming) as a result of the Fatal Collision. That action was captioned Janet M. Fleming, et al. v. Gregory Dionisio, et al., and was filed in the Connecticut Superior Court, Judicial District of Stamford / Norwalk at Stamford, Docket No. FST-CV09-6002255-S (the "Wrongful Death Action").

42.      In the Wrongful Death Action, the Plaintiff alleged that Gregory Dionisio and John Dionisio were legally responsible for non-economic and economic damages because Gregory Dionisio, while operating an automobile owned and maintained by his father John Dionisio, (a) breached his duty of care and was negligent in that, among other things, he crossed the double yellow dividing line of Ridgefield Road in Wilton, Connecticut, and struck Thomas C. Fleming's motorcycle head-on in the wrong lane of travel, and (b) was reckless in that, among other things, he was driving under the influence of intoxicating liquor and/or drugs and failed to maintain his vehicle in the proper lane.

**D.   GEICO's Wrongful Failure to Settle the Wrongful Death Action Within Policy Limits**

43.   On December 1, 2010, Plaintiff's counsel in the Wrongful Death Action offered orally to settle the claims against all defendants, including Gregory Dionisio, for the sum of $1,570,000.00, the full amount of coverage available under the GEICO Policies, in exchange for a release of claims against them.

44.   On December 2, 2010, Plaintiff's counsel in the Wrongful Death Action offered in writing to settle the claims against all defendants, including Gregory Dionisio, for the sum of $1,570,000.00, the full amount of coverage available under the GEICO Policies, in exchange for a release of claims against them.

45.   Although GEICO was aware of facts (including, but not limited to, Gregory Dionisio's sworn testimony) establishing the existence of coverage for Gregory Dionisio under the Mother's Connecticut Auto Policy related to the Fatal Collision, on January 10, 2011, GEICO denied any coverage for Gregory Dionisio under the Mother's Connecticut Auto Policy related to the Fatal Collision.

46.   On July 25, 2012, jury selection commenced in the Wrongful Death Action.

47.   On August 2, 2012, the Plaintiff and John Dionisio reached an agreement pursuant to which John Dionisio would pay the Plaintiff the sum of $1,300,000.00 in consideration of a release of claims against John Dionisio.

48.   Although Gregory Dionisio specifically was not included in the August 2, 2012 settlement, and despite the fact that GEICO purposefully failed to obtain a release of liability against him, GEICO nevertheless attempted to use the Plaintiff's settlement with John Dionisio as a means to extinguish Plaintiff's claims against Gregory Dionisio by operation of law.

10

49.     At the time that GEICO offered the sum of $1,300,000.00 to settle the Wrongful Death Action against John Dionisio only, it knew that it should have made any and all settlement offers contingent on Plaintiff providing a release of liability against Gregory Dionisio as well.

50.     In offering to settle the Wrongful Death Action against John Dionisio only, GEICO knowingly failed to procure a release of liability against Gregory Dionisio in the hope that it could eliminate Gregory Dionisio's liability by way of a summary judgment motion without having to pay Plaintiff the balance of coverage available under the GEICO Policies ($270,000.00).

51.     On August 10, 2012, the Court in the Wrongful Death Action granted Gregory Dionisio permission to pursue a motion for summary judgment on the following theory: "Under the circumstances of [the] case, as a matter of law, the Release in Full provided by plaintiffs to the former co-defendant, John A. Dionisio, operates to release and discharge the undersigned defendant, Gregory Dionisio, with regard to the negligence claims set forth in the First and Fourth Counts.  The plaintiffs have been paid $1.3 million in consideration for the Release in Full."

52.     On January 31, 2013, the Court in the Wrongful Death Action denied Gregory Dionisio's motion for summary judgment, finding that the settlement with John Dionisio did not operate to release and/or discharge Plaintiff's claims against Gregory Dionisio.

53.     In March of 2013, jury selection commenced for a second time in the Wrongful Death Action.

11

54.     During the course of jury selection in March of 2013, Plaintiff's counsel made several demands for payment of the remaining $270,000.00 of insurance available under the GEICO Policies in exchange for a release of Plaintiff's claims against Gregory Dionisio.

55.     By April 1, 2013, GEICO determined in fact that Gregory Dionisio was entitled to coverage under the Mother's Connecticut Auto Policy despite having no new or different information upon which to base its coverage decision.

56.     On the morning of April 1, 2013, Plaintiff's counsel received a call from Attorney James J. Noonan on behalf of GEICO and/or Maryann Dionisio and/or Gregory Dionisio agreeing to pay the $250,000.00 of available coverage on the Mother's Connecticut Auto Policy.  During that conversation, Attorney Noonan never disclosed the reason for GEICO's decision to change its coverage determination.

57.     On April 1, 2013 at 5:03 p.m., Plaintiff's counsel received an e-mail from Attorney James J. Noonan on behalf of GEICO and/or Maryann Dionisio and/or Gregory Dionisio agreeing to pay the sum of $250,000.00 "to settle the claim subject to an agreement on Release language and an agreement to release Gregory, Maryann and GEICO."   In that letter, Attorney Noonan did not disclose the reason for GEICO's decision to change its coverage determination.

58.     Neither in the April 1, 2013 telephone conversation nor in the April 1, 2013 e-mail did Attorney Noonan discuss and/or offer the $20,000.00 of coverage available to Gregory Dionisio under the Son's Connecticut Auto Policy.

59.   On April 4, 2013, Plaintiff's counsel received another e-mail from Attorney James J. Noonan on behalf of GEICO and/or Maryann Dionisio and/or Gregory Dionisio indicating that GEICO's offer to pay the $250,000.00 of coverage available under the Mother's Connecticut Auto Policy would be withdrawn if not accepted in writing by 4:00 p.m. on Friday, April 5, 2013.

60.   Although GEICO was first made aware of the claim on or about July 5, 2009, and had almost four years until approximately April 1, 2013 to properly investigate and administer the claim, it offered to pay to the Plaintiff on behalf of Gregory Dionisio the $250,000.00 of coverage available under the Mother's Connecticut Auto Policy only for a period of five days.

61.   From April 2, 2013 through April 11, 2013, the Wrongful Death Action was tried before a jury of six, with the Honorable Kenneth Povodator presiding.

62.   On April 11, 2013, the jury in the Wrongful Death Action returned a Plaintiff's verdict as follows:

| | | |
|---|---|---|
| *As to the Estate of Thomas C. Fleming* | | |
| 1. Compensatory Damages: | Economic: | $503,847.78 |
| | Non-Economic: | $725,000.00 |
| | Total: | $1,228,847.78 |
| 2. CGS § 14-295 Damages: | | $1,228,847.78 |
| 3. Common Law Punitive Damages: | | To be determined |
| | | |
| *As to the Plaintiff Janet Fleming individually* | | |
| 1. Compensatory Damages: | | $30,000.00 |
| 2. CGS § 14-295 Damages: | | $30,000.00 |
| 3. Common Law Punitive Damages: | | To be determined |
| | | |
| | Total: | $2,517,695.56 |

63.   On April 11, 2013, the Court in the Wrongful Death Action ordered the verdict accepted and recorded.

13

64.     On October 11, 2013, the Court in the Wrongful Death Action entered

judgment on the jury verdict (the "Judgment") as follows:

| | |
|---|---|
| *As to the Estate of Thomas C. Fleming* | |
| 1. Compensatory Damages: | $1.00 |
| 2. CGS § 14-295 Damages: | $1,228,847.78 |
| 3. Common Law Punitive Damages: | $288,237.09 |
| | |
| *As to the Plaintiff Janet Fleming individually* | |
| 1. Compensatory Damages: | $1.00 |
| 2. CGS § 14-295 Damages: | $30,000.00 |
| 3. Common Law Punitive Damages: | $3,000.00 |
| | |
| | Total:  $1,550,086.87 |

65.     On March 27, 2014, the Court in the Wrongful Death Action ordered

interest on the Judgment at the rate of 5% per year calculated from October 11, 2013.

66.     Plaintiff is the legal owner of the Judgment.

67.     Plaintiff is authorized to maintain the claims for relief asserted in this

Complaint pursuant to the Connecticut Direct Action Statute, Conn. Gen. Stat. § 38a-

321, which provides, in relevant part:

> Each insurance company which issues a policy to any person, firm or
> corporation, insuring against loss or damage on account of the bodily
> injury or death by accident of any person, or damage to the property of
> any person, for which loss or damage such person, firm or corporation is
> legally responsible, shall, whenever a loss occurs under such policy,
> become absolutely liable, and the payment of such loss shall not depend
> upon the satisfaction by the assured of a final judgment against him for
> loss, damage or death occasioned by such casualty.  No such contract of
> insurance shall be cancelled or annulled by any agreement between the
> insurance company and the assured after the assured has become
> responsible for such loss or damage, and any such cancellation or
> annulment shall be void.  Upon the recovery of a final judgment against
> any person, firm or corporation by any person, including administrators or
> executors, for loss or damage on account of bodily injury or death or
> damage to property, if the defendant in such action was insured against
> such loss or damage at the time when the right of action arose and if such
> judgment is not satisfied within thirty days after the date when it was
> rendered, such judgment creditor shall be subrogated to all the rights of

the defendant and shall have a right of action against the insurer to the same extent that the defendant in such action could have enforced his claim against such insurer had such defendant paid such judgment.

68.     Plaintiff has been subrogated to the rights of Gregory Dionisio and brings this action to the same extent that Gregory Dionisio could have enforced his claims against GEICO.

## CLAIMS FOR RELIEF

**Count One – Breach of Contract**

1-68.   Plaintiff repeats and restates Paragraphs 1 through 68 as and for Paragraphs 1 through 68 of Count One as if fully set forth herein.

69.     Plaintiff and/or Gregory Dionisio produced and made available to GEICO documents and information well beyond that reasonably required for a legitimate investigation and assessment both of its own liability under the GEICO Policies and the potential liability of Gregory Dionisio resulting from its failure to honor its obligations under the GEICO Policies.

70.     GEICO failed and refused to honor its obligations under the GEICO Policies to resolve the claims asserted in the Wrongful Death Action, and has failed to provide any reasonable explanation for that failure, and thereby has breached its contracts of insurance with Plaintiff.

71.     As a result of GEICO's conduct in failing to properly investigate and pay Plaintiff's claims in good faith and in a timely manner, and as a result of GEICO's breach of the contract of insurance as set forth above, Plaintiff has sustained damages.

15

**Count Two – Breach of the Implied Covenant of Good Faith and Fair Dealing**

1-70.   Plaintiff repeats and restates Paragraphs 1 through 70 of Count One as and for Paragraphs 1 through 70 of Count Two as if fully set forth herein.

71.   The GEICO Policies contained an implied covenant of good faith and fair dealing pursuant to which GEICO was obligated to deal with Plaintiff in a fair, reasonable, and equitable matter to ensure that Plaintiff received all benefits to which she was entitled under the GEICO Policies.

72.   Pursuant to the terms of the GEICO Policies, GEICO was obliged to act in good faith toward Gregory Dionisio, and to protect his interests, particularly his interests in avoiding a judgment in an amount above the limits of available coverage under the GEICO Policies.

73.   GEICO's duties required, among other things, that GEICO take advantage of opportunities to settle claims promptly and within its coverage limits when it was reasonably clear that Gregory Dionisio would be found liable for the claims asserted in the Wrongful Death Action, particularly given the substantial likelihood that any judgment rendered against Gregory Dionisio in the Wrongful Death Action would exceed the amount of the available insurance coverage under the GEICO Policies.

74.   Within a few days of the date of the fatal accident giving rise to the Wrongful Death Action (July 5, 2009), it was reasonably clear that Gregory Dionisio would be found legally liable for damages arising out of the death of Plaintiff's decedent, Thomas C. Fleming.

75.     By December 1, 2010, when Plaintiff offered to resolve all claims against Gregory Dionisio and John Dionisio in consideration of a payment equal to all available insurance coverage under the GEICO Policies ($1,570,000.00), it was reasonably clear that a judgment entered in favor of the Plaintiff and against Gregory Dionisio would exceed the insureds' available coverage of $1,570,000.00.

76.     By paying Plaintiff the sum $1,300,000.00 in exchange for a release of claims against John Dionisio only, and without procuring a release for Gregory Dionisio, GEICO intentionally attempted to limit its own liability at the expense of Gregory Dionisio.

77.     By attempting to use the release against John Dionisio as a way to obtain a release for Gregory Dionisio, GEICO willfully and intentionally exposed Gregory Dionisio to personal liability.

78.     GEICO acted to injure and deprive Gregory Dionisio of his legitimate benefits under the GEICO Policies.

79.     GEICO's actions and omission in its handling of Plaintiff's claims, including, but not limited to, (a) its failure to investigate, (b) its failure to pay, (c) its failure to make its $1,300,000.00 payment contingent on a release of claims against Gregory Dionisio, and (d) its unsuccessful attempt to use the release against John Dionisio as a release against Gregory Dionisio thereby exposing Gregory Dionisio to substantial personal liability, were intentional, willful, reckless, sinister and without any reasonable justification, and were undertaken in bad faith to avoid responsibility for paying the full amount on Plaintiff's claim and/or were undertaken in bad faith to limit its own financial responsibility at the expense of Gregory Dionisio's personal liability.

17

80.     GEICO's obligations to refrain from taking any action that would injure

Gregory Dionisio's right to indemnification under the Policies, and to act at all times in

good faith and to deal fairly, extends to the Plaintiff as a matter of law.

81.     GEICO breached its duty of good faith and fair dealing with respect to

Gregory Dionisio's rights under the GEICO Policies, which by operation to the Plaintiff,

in that GEICO failed to comply with its obligations under the Connecticut Unfair

Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. §§ 38a-815 and 38a-816(6), in that

GEICO:

(a)     refused to pay the claim without conducting a reasonable investigation based upon all available information;

(b)     failed to deal with Plaintiff in good faith;

(c)     did not attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim despite the fact that liability was reasonably clear;

(d)     attempted to settle the claim for less than the amount to which a reasonable person would have believed he or she was entitled;

(e)     compelled Plaintiff to institute this litigation to recover amounts owing under the GEICO Policies;

(f)     failed to provide a reasonable explanation of the basis in the GEICO Policies in relation to the facts or applicable law for denial of Plaintiff's claim; and

(g)     failed to promptly settle Plaintiff's claim even though liability under the GEICO Policies were reasonably clear.

82.     GEICO breached its duty of good faith and fair dealing with respect to Gregory Dionisio's rights under the GEICO Policies, which by operation of law extend to the Plaintiff, in that GEICO:

(a)     had no reasonable basis not to accept an offer to settle all of the Plaintiff's claims within the limits provided for under the GEICO Policies, when it had multiple opportunities to do so prior to April 2, 2013, and when it already had determined by its own investigation that liability of its insured was clear and fair compensation for the Plaintiff's wrongful death could reasonably exceed the limits of coverage;

(b)     intentionally disregarded Gregory Dionisio's interests by refusing to accept Plaintiff's offers to settle within the limits provided for under the GEICO Policies because it was motivated by its own pecuniary interests;

(c)     intentionally exposed Gregory Dionisio to liability when it paid $1,300,000.00 under the Father's New York Auto Policy and the Father's Umbrella Policy for a release in favor of John Dionisio only; and

(d)     failed to offer the Plaintiff the full amount of coverage afforded under the GEICO Policies in exchange for a full and final release in favor of Gregory Dionisio.

83.     By engaging in the foregoing conduct, GEICO callously, willfully, and deliberately disregarded Plaintiff's rights under the GEICO Policies in an attempt to manufacture a reason to reduce or deny Plaintiff's claim despite the lack of any good faith basis to do so, and to allow GEICO to avoid paying money to cover Plaintiff's compensable losses under the GEICO Policies.

84.     GEICO's unreasonable and intentional conduct in delaying and withholding payment under the GEICO Policies was in reckless, wanton, deliberate, malicious and callous disregard of Plaintiff's rights, and constitutes a breach of the implied covenant of good faith and dealing present in the GEICO Policies.

85.     As a result of GEICO's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages.

**Count Three – Unfair Trade Practices**

1-84.   Plaintiff repeats and restates Paragraphs 1 through 84 of Count Two as and for Paragraphs 1 through 84 of Count Three as if fully set forth herein.

85.     At all times relevant to this Complaint, GEICO was a "person" as defined in Conn. Gen. Stat. § 42-110a(3).

86.     At all times relevant to this Complaint, GEICO was engaged in the conduct of trade or commerce in the State of Connecticut, as defined in Conn. Gen. Stat.  § 42-110a.

87.     Despite Plaintiff's compliance with all obligations of an insured party pursuant to the provisions of the GEICO Policies, GEICO refused to pay all amounts due under the GEICO Policies, even though GEICO knew that Plaintiff's claim was valid in all respects and that the failure to pay all amounts available under the GEICO Policies would subject Gregory Dionisio to substantial personal liability.

88.     GEICO's actions as set forth above constitute unfair claims settlement practices in violation of CUIPA, Conn. Gen. Stat. §§ 38a-815 and 38a-816(6), in that GEICO:

> (a)     failed to acknowledge and act with reasonable promptness upon communication with respect to the claim;
>
> (b)     failed to adopt and/or implement reasonable standards for the prompt investigation of claims;
>
> (c)     refused to pay the claim without conducting a reasonable investigation based upon all available information;

    (d)    failed to deal with Plaintiff in good faith;

    (e)    failed to affirm or deny coverage within a reasonable time after proof of loss statements were completed by Plaintiff;

    (e)    did not attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim despite the fact that liability was reasonably clear;

    (f)    attempted to settle the claim for less than the amount which a reasonable man would have believed he was entitled;

    (g)    compelled Plaintiff to institute this litigation to recover amounts owing under the GEICO Policies;

    (h)    failed to provide a reasonable explanation of the basis in the GEICO Policies in relation to the facts or applicable law for denial of Plaintiff's claim; and

    (i)    failed to promptly settle Plaintiff's claim even though liability under the GEICO Policies was reasonably clear.

89.    GEICO's actions as described above were unfair and deceptive practices and acts in carrying out the business of insurance for purposes of Conn. Gen. Stat. §§ 38a-815 and 38a-316(6).

90.    The actions, omissions, evasiveness, and overall conduct of GEICO as set forth above were unfair and deceptive acts or practices and occurred in the conduct of GEICO's trade or business, all in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat.  §§ 42-110a and 42-110b, in that such actions, omissions, evasiveness and conduct were and are immoral, unethical, oppressive, and unscrupulous.

91.     GEICO has engaged in, and continues to engage in, a pattern and practice of commercially unreasonable, unfair, and deceptive claims settlement practices similar to those described above with sufficient frequency and regularity to constitute a general business practice and policy, including, but not limited to, unfair and deceptive claim settlement practices at issue in legal actions such as Belcher v. GEICO Indemnity Co., Connecticut Superior Court, J.D. of Hartford, Docket No. HHD-CV-14-6050889-S; Eaton v. GEICO Ins. Co., Connecticut Superior Court, J.D. of Danbury, Docket No. CV-99-0334469-S; and Fuhr v. GEICO, Judicial District of Stamford-Norwalk at Stamford, Docket No. CV-98-0167162-S, and in complaints lodged with the Connecticut Department of Insurance, such as Complaint Nos. 100706, 203955, 204202 (GEICO General Ins. Co.), and Complaint Nos. 105198, 403082 (GEICO Indemnity Co.).

92.     GEICO has been accused of, and been found liable for, bad faith conduct and unfair claims settlement practices based on its failure to settle claims against its insureds within policy limits, thereby exposing its insureds to liability in excess of limits of available coverage, in legal actions such as Hayas v. GEICO General Ins. Co., No. 8:13–cv–1432–T–33AEP (U.S. District Court, Middle District of Florida); Hooks v. GEICO General Ins. Co., No. 3:13-cv-891-J-34JBT (U.S. District Court, Middle District of Florida); Taylor v. GEICO Indemnity Co., No. 8:12–cv–2448–T–AEP (U.S. District Court, Middle District of Florida); McDaniel v. GEICO General Ins. Co., No. 1:12-cv-2028- AWI-JLT (U.S. District Court, Eastern District of California); Jaimes v. GEICO General Ins. Co., No. 9:10-cv-80769-KAM (U.S. District Court, Southern District of Florida).

93.     By engaging in the actions, conduct, and business practices as set forth above, GEICO has deprived, and continues to deprive, its insureds -- including Plaintiff -- of the benefits to which they are entitled, and for which they have paid valuable premiums, under contracts of insurance issued by GEICO.

94.     As a direct result of GEICO's unfair and deceptive acts and practices as set forth above, and specifically its violations of Conn. Gen. Stat.  §§ 38a-815 and 38a-816(6), and CUTPA, Conn. Gen. Stat.  §§ 42-110a and 42-110b, Plaintiff has suffered ascertainable economic losses and other substantial damages.

95.     Pursuant to Conn. Gen. Stat.  § 42-110g(c), Plaintiff will forward a copy of this Complaint to the offices of the Attorney General of the State of Connecticut and the Commissioner of Consumer Protection.

WHEREFORE, plaintiff Janet McCall Fleming claims the following relief:

1.      Compensatory damages;

2.      Punitive damages pursuant to Conn. Gen. Stat. § 42-110g(a) and under

common law;

3.      Attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g(d);

4.      Costs of this action;

5.      Interest; and

6.      Any and all further relief which the Court may deem just and equitable.

**Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Plaintiff**

**hereby demands a trial by jury on all issues so triable.**


PLAINTIFF
JANET MCCALL FLEMING


By:___/s/ Douglas J. Varga_____
   Douglas J. Varga (ct 18885)

      LUCAS BAGNELL VARGA LLC
      2425 Post Road, Suite 200
      Southport, CT 06890
      Tel:  (203) 227-8400
      Fax:   (203) 227-8402
      E-Mail: dvarga@lbv-law.com

   Her Attorneys

**EXHIBIT A**

03/09/10 16:27                              17168980542                                    Pg 002

# GEICO

geico.com

GEICO GENERAL INSURANCE COMPANY
ONE GEICO PLAZA, WASHINGTON, DC 20076-0001

TEL: 1-800-841-3000
FAX: 1-516-704-2611

U-31-DP-1 (7-07)

## Policy Number: 1140-06-05-08

**FAMILY AUTOMOBILE POLICY ENDORSEMENT DECLARATIONS**

This is a description of your coverage. Please keep for your records.

Item 1: Named Insured and Address
JOHN A DIONISIO
180E PROSPECT
MAMARONECK NY 10543-3497

E-Mail Address: Info@asapstc.com

| Date Issued: 03-28-09 | ENDORSEMENT EFFECTIVE: | 04-01-09 |
|---|---|---|
| Policy Period From   04-01-09 | to   10-01-09 | 12:01 a.m. Local time at the address of the named insured. |

The insured vehicle(s) will be regularly garaged in the town and state shown in Item 1, except as noted in the Vehicle Segment.

Contract Type: A30NY

CONTRACT AMENDMENTS:      ALL VEHICLES - A128 A30NY

UNIT ENDORSEMENTS:        A115 (VEH 1); A331 (VEH 1); A431NY (VEH 1); M700ERB (VEH 1)

## IMPORTANT MESSAGES

-Please refer to the separate No-Fault page for an explanation of your No-Fault Coverages.

-Supplementary Uninsured/Underinsured Motorist Coverage includes out-of-state Uninsured/Underinsured Motorist Coverage.

-The maximum amount payable under SUM Coverage shall be the policy's SUM limits reduced and thus offset by Motor Vehicle Bodily Injury Liability Insurance Policy or bond payments received from, or on behalf of, any negligent party involved in the accident, as specified in the SUM Endorsement.

-Please refer to the Premium Reduction and/or Surcharge page for the dollar amount of your premium reduction(s) and/or surcharge(s).

-If your payment is dishonored by your bank or financial institution, GEICO will assess a $20.00 service fee to your account to cover the additional time and expense we incur to collect your premium.

-The GEICO Property Agency can arrange for your homeowner's, renter's and condominium owner's insurance needs. Just call toll-free at 1-888-306-9500. Refinancing?  Let us provide the new Homeowner's Policy you need.

-A credit, discount, or premium reduction has been applied to this policy: MULTI-CAR

-The 1989 CHEV has been added to your policy.

-A $5 surcharge has been added to your policy for the vehicle you have registered in New York. Please refer to the enclosed flyer, M544NY, that explains the New York Automobile Theft Prevention Program in detail.

CONTINUED ON NEXT PAGE(S)

INSURED COPY                          91      A30NY        26904                   PAGE 1 TURN OVER

GEICO GENERAL INSURANCE COMPANY

| Date Issued: 03-28-09 | Policy Number: 1140-06-05-08 |
|---|---|

ULTRA PREFERRED

| VEHICLE | RATED LOCATION | CLASS, SYMBOL AND VEH. LIAB. SYMBOL |
|---|---|---|
| 1  96  DODGE    CARA SE  1B4GP45RXWB757930 | MAMARONECK NY 10543 | A -L -50-B4 -8       0 E |
| 2  89  CHEV     CAVALER  1G1JF81WBK7135680 | MAMARONECK NY 10543 | A -N -50-B4 D        N O |

| COVERAGES Coverage applies where a premium or 0.00 is shown for the vehicle. | LIMITS OR DEDUCTIBLES | Vehicle 1 | PREMIUMS Vehicle 2 | Vehicle |
|---|---|---|---|---|
| BODILY INJURY LIABILITY EACH PERSON/EACH OCCURRENCE | $300,000/$300,000 | 90.10 | 103.80 | |
| PROPERTY DAMAGE LIABILITY | $100,000 | 63.30 | 73.70 | |
| BASIC PERSONAL INJURY PROTECTION | OPT-A/50,000/2,000WL | 42.80 | 63.10 | |
| SUPPLEMENTARY UNINSURED/ UNDERINSURED MOTORIST EACH PERSON/EACH OCCURRENCE | $100,000/$300,000 | 18.00 | 18.00 | |
| COMPREHENSIVE | $500 DED/FULL GLASS | 19.90 | | |
| COLLISION | $500 DED | 62.90 | | |
| EMERGENCY ROAD SERVICE | FULL | 6.50 | | |
| RENTAL REIMBURSEMENT | $30 PER DAY $900 MAX | 15.10 | | |

| SIX MONTH PREMIUM PER VEHICLE: | $  318.60  $  258.50 |
|---|---|

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

**Lienholder Vehicle**          **Lienholder Vehicle**          **Lienholder Vehicle**

U31DPGV6 (7-07)



| Important Messages Continued | Date Issued: 03-28-09 | Policy Number:　1140-06-05-06 |
|---|---|---|

**IMPORTANT MESSAGES**

-The attached billing also includes this adjustment for the period of 3/30/2009 to 4/1/2009.

17168980542

# GEICO
### GEICO GENERAL INSURANCE COMPANY

## NEW YORK PREMIUM REDUCTION AND/OR SURCHARGE INFORMATION

**POLICY NUMBER: 1140-06-05-06**                    **DATE ISSUED: 08-28-09**

·The reduction(s) shown below is already reflected in your six month policy premium.

| DISCOUNTS & PREMIUM REDUCTIONS | VEHICLE 1 | VEHICLE 2 | VEHICLE 3 |
|---|---|---|---|
| MULTI-CAR | $52.00 | $40.50 | |
| ANTI-LOCK BRAKES | $16.50 | | |
| DEFENSIVE DRIVER | $24.30 | $23.60 | |
| ANTI-THEFT DEVICE | $0.80 | | |
| 5 YEAR GOOD DRIVING | $24.20 | $21.40 | |
| PASSIVE RESTRAINT/AIR BAG | $14.50 | | |

M-553-NY

03/09/10 16:27    Case 3:15-cv-00535-VAB   Document 1   Filed 04/10/15   Page 30 of 95
17168980542                                          Pg 006

# GEICO

## NEW YORK NO-FAULT BENEFITS DECLARATION PAGE

GEICO GENERAL INSURANCE COMPANY

POLICY NUMBER: 1140-06-05-06                    DATE ISSUED: 03-25-09

THIS IS NOT A BILL, but a breakdown of your No-Fault (PIP) coverages to show how much No-Fault coverage you have and the premium. Your total bill is shown on the bill page of your declarations. Your No-Fault coverages with premiums and your other coverages and premiums are shown on the vehicle page of your declarations. REFER TO THE VEHICLE PAGE AND THE PERSONAL INJURY PROTECTION AMENDMENT FOR THE OPTION YOU CARRY.

| VEHICLE 1 | PERSONAL INJURY PROTECTION (NO-FAULT) | | |
|---|---|---|---|
| | COVERAGE LIMIT | | PREMIUM |
| MANDATORY PERSONAL INJURY PROTECTION | $ 50,000.00 | | 42.80 |
| AGGREGATE NO-FAULT BENEFITS AVAILABLE | $ 50,000.00 | TOTAL | 42.80 |
| * MAXIMUM MONTHLY WORK LOSS BENEFIT | $ 2,000.00 | | |
| OTHER NECESSARY EXPENSES PER DAY | $ 25.00 | | |
| DEATH BENEFIT | $ 2,000.00 | | |

| VEHICLE 2 | PERSONAL INJURY PROTECTION (NO-FAULT) | | |
|---|---|---|---|
| | COVERAGE LIMIT | | PREMIUM |
| MANDATORY PERSONAL INJURY PROTECTION | $ 50,000.00 | | 63.10 |
| AGGREGATE NO-FAULT BENEFITS AVAILABLE | $ 50,000.00 | TOTAL | 63.10 |
| * MAXIMUM MONTHLY WORK LOSS BENEFIT | $ 2,000.00 | | |
| OTHER NECESSARY EXPENSES PER DAY | $ 25.00 | | |
| DEATH BENEFIT | $ 2,000.00 | | |

* THE MAXIMUM MONTHLY WORK LOSS BENEFIT AND OTHER NECESSARY EXPENSES PER DAY ARE INCLUDED IN THE AGGREGATE SHOWN ABOVE. THE $2,000 DEATH BENEFIT IS IN ADDITION TO THE AGGREGATE.

M-559-NY

**EXHIBIT B**

# GEICO

GOVERNMENT EMPLOYEES INSURANCE COMPANY

ONE GEICO PLAZA, WASHINGTON, D.C. 20076

> **GEICO'S PERSONAL**
> **UMBRELLA POLICY**
> REISSUED DECLARATIONS

POLICY NUMBER P 6103427

Policy Period From 06/04/09 To 06/04/10          PHC RI-NY- 06/04/09

INSURED NAME AND ADDRESS

JOHN A DIONISIO
180E PROSPECT
MAMARONECK NY  10543-3437

THIS POLICY IS EFFECTIVE AT 12:01 A.M. STANDARD TIME AT THE RESIDENCE OF THE INSURED. INSURANCE IS PROVIDED WITH RESPECT TO THE FOLLOWING COVERAGES AND LIMITS SPECIFIED WHERE A PREMIUM IS STATED, SUBJECT TO ALL CONDITIONS OF THIS POLICY.

I.   LIMIT OF LIABILITY          $ 1,000.000

II.  RETAINED LIMIT          $      500

| III. RATING INFORMATION | | IV. PREMIUM | V. MINIMUM REQUIRED LIMITS OF PRIMARY INSURANCE |
|---|---|---|---|
| AUTOMOBILE 1998 DODGE | | $   77.00 | $ 300,000/300,000/100,000 |
| AUTOMOBILE 1989 CHEV | | $   77.00 | $ 300,000/300,000/100,000 |
| PRIMARY RESIDENCE 180 E PROSPECT MAMARONECK NY   10543-3437 | | $   80.00 | $ 300,000 |
| RENTAL 181 PURCHASE STREET RYE NY   10580 | | $    0.00 | $ 300,000 |
| RENTAL 20 CHESTNUT STREET RYE NY   10580 | | $    0.00 | $ 300,000 |
| WATERCRAFT 26FT OR MORE -OR- OVER 50HP 90 MAINSHIP 41FT ENGINE #1 464HP ENGINE #2 454HP | | $   60.00 | $ 300,000 |
| TOTAL PREMIUM | | $  294.00 | |

HU-1 (6-80)                                                            (P3)

Sep. 3. 2009 1:32PM

No. 1653   P. 2

## GOVERNMENT EMPLOYEES INSURANCE COMPANY
### ONE GEICO PLAZA, WASHINGTON, D.C. 20076

POLICY NUMBER P 5103427

PHC RI-NY- 06/04/09

### FORMS AND ENDORSEMENTS

PPA1NY          PPA1NY Personal Umbrella Liability
PPE1NYA        PPE1NYA Policy Amendment (New York)

IMPORTANT MESSAGES

OFFICE USE ONLY

(D1)

HU-1 [6-00]

# GEICO'S PERSONAL UMBRELLA POLICY

## PERSONAL UMBRELLA LIABILITY INSURANCE

### AGREEMENT (NEW YORK)

We provide the insurance in this policy in return for payment of the premium when due and compliance with the policy provisions.

## PART I - DEFINITIONS

In this policy, "you" and "your" mean the *insured* named in the declarations and spouse if a resident of *your* household. "We", "us" and "our" mean the Government Employees Insurance Company. Other words are defined as follows:

1. "*Auto*" means:

   (a) an owned or non-owned auto as defined in *your* primary automobile liability insurance policy; or

   (b) any other vehicle described in the policy *declarations.*

2. "*Business*" means full-time or part-time trades, professions or occupations.

3. "*Business property*" means:

   (a) any property on which business is conducted; and

   (b) any property containing more than two residential units.

4. "*Damages*" means the total of:

   (a) damages an *insured* must pay:

   (1) legally; or

   (2) by agreement with *our* written consent;

   because of *personal injury* or *property damage* covered by this policy.

   (b) reasonable expenses an *insured* incurs at *our* request in the:

   (1) investigation;

   (2) defense; and

   (3) settlement

   of a claim or suit because of *personal injury* or *property damage* covered by this policy.

   (c) "*Damages*" does not include:

   (i) salaries of an *insured's* regular employees; or

   (ii) expenses payable under Part V. of this policy; or

   (iii) punitive or exemplary damages.

5. "*Day care*" means the care of persons other than an *insured* or relative, performed by an *insured* or an employee of an *insured* for monetary or other compensation. Mutual exchange of *day care* services is not considered as compensation.

6. "*Declarations*" wherever used in this policy, means the declarations page or pages for this policy.

7. "*Insured*" means:

   (a) You and *your* spouse if a resident of *your* household; but with respect to an auto *you* do not own or lease which is furnished for regular use by *you* or your spouse, coverage applies only if the *auto* is insured by a primary auto policy.

   (b) Relatives residing in *your* household as well as a household resident under age 21 in the care and custody of *you* or *your* spouse. With respect to an *auto*, such person is an *insured* only if the *auto* is insured by a primary policy.

   (c) Persons not defined in 7.(a). or 7.(b). above, if using an *auto* or *watercraft* owned or furnished for the regular use of a person defined in 7.(a). or 7.(b). above, provided the use is with permission. With respect to an *auto*, such person is an *insured* only if the auto is insured by a primary policy.

   (d) Any person or organization legally responsible for the acts or omissions of a person for whom coverage is afforded under this policy; while that person is using an *auto* or *watercraft* insured by a primary policy.

   (e) Any person or organization legally responsible for damages caused by animals owned by *you*, *your* spouse, and residents of *your* household who are relatives or persons under *your* care and custody.

   (f) The following are not "*insureds*":

   (1) the owner or lessor (or their agents or employees) of:

   · (i) an *auto*;

   (ii) recreational vehicle; or

   (iii) *watercraft*

   loaned to or hired for use by *you* or on *your* behalf.

(2) a person other than an *insured* shown in 7.(a) or 7.(b) above using an *auto* or *watercraft* while employed in the business of:

    (i) selling;
    (ii) servicing;
    (iii) repairing;
    (iv) maintaining;
    (v) parking;
    (vi) docking;
    (vii) mooring; or
    (viii) storing

*autos* or *watercraft*. This includes a person other than an *insured* or organization employing or engaging a person using the *autos* or *watercraft* in the above activities.

(3) a person or organization with custody of animals owned by an *insured* in 7.(a) or 7.(b) above, in the course of any business or without the consent of an *insured* in 7.(a) or 7.(b) above.

As regards 7.(b), 7.(c) and 7.(d) above, if the *auto* is not an owned auto or non-owned auto as defined in *your* primary automobile liability insurance policy, but is described on this policy's *declarations*, the required *primary insurance* need not be issued by us.

8. *"Occurrence"* means an accident or event, including a continuous or repeated exposure to conditions which results in *personal injury* or *property damage* neither expected or intended by *you*.

9. *"Personal injury"* means:

    (a) mental or bodily injury, shock, sickness, disease or death including care and loss of services; or

    (b) injury arising out of:

        (i) false arrest, detention or imprisonment, or malicious prosecution; or

        (ii) libel, slander, defamation, humiliation, or a publication or utterance in violation of a person's right of privacy not arising out of any business pursuit; or

        (iii) wrongful entry or eviction, or other invasion of the right of private occupancy.

10. *"Personal watercraft"* means *watercraft* specifically designed to hold four or fewer persons and propelled by a jetpump and/or impeller.

11. *"Primary insurance"* means insurance:

    (a) for which a minimum required liability limit is shown on the *declarations*; and

    (b) which is payable on behalf of an *insured* for liability for *personal injury* or *property damage*; and

    (c) which must be maintained as a condition of this policy.

12. *"Property damage"* means damage to or loss of use of tangible property.

13. *"Retained limit"* is the amount of any damages an *insured* must pay for any *occurrence* resulting in *personal injury* or *property damage* which is not covered by *your primary insurance*. The *retained limit* is as shown in item II of the *declarations*.

14. *"Watercraft"* means a vessel intended for navigation on water. *"Watercraft"* as used in this policy does not include *personal watercraft* as defined in this policy.

Any terms that are not specifically defined in this policy will follow the definitions of *your* primary insurance policy.

## PART II - COVERAGE

We pay *damages* on behalf of an *insured* arising out of an *occurrence*, subject to the terms and conditions of this policy.

## PART III - EXCLUSIONS

We do not cover *damages* resulting from:

1. *Personal injury* to a person eligible for payments voluntarily provided by an *insured* or required to be provided under:

    (a) workers' compensation laws;
    (b) non-occupational disability laws; or
    (c) occupational disease laws.

2. The ownership, maintenance, use, loading or unloading of any aircraft. Model or hobby aircraft are not excluded if not designed to carry people or cargo.

3. The rendering of or failure to render professional services.

4. Acts committed by or at an *insured's* direction with intent to cause *personal injury* or *property damage*. This exclusion does not apply to *personal injury* or *property damage* resulting from an act committed by an *insured* with reasonable and legally permissible force to protect persons and property from injury or damage. This exclusion also does not apply to Part I, Item 9(b).

5. *Business* pursuits or *business property* of an *insured* unless covered by *primary insurance* described in the *declarations*. Our coverage is no broader than the *primary insurance* except for our liability limit.

6. The ownership, maintenance, use, loading or unloading of any *watercraft* owned by an *insured*. This exclusion does not apply:

    (a) if on the policy's effective date, the *watercraft* is covered by *primary insurance* and a premium is shown in the *declarations*; or

    (b) if we are informed within 30 days after the *watercraft* is obtained and is covered by *primary insurance* and an additional premium is paid to us; or

(c) while the *watercraft* is stored.

A premium need not be shown in the *declarations* if the required *primary insurance* is a Homeowners policy.

7. *Property damage* to:

(a) property owned by an *insured*; or
(b) aircraft or *watercraft* rented to, used by, or in the care of an *insured*; or
(c) property rented to, used by , or in the care of an *insured*.

8. *Personal injury* or *property damage* for which an *insured* under this policy is also insured under a nuclear energy liability policy. This includes a policy which would cover *damages* but for its termination because the limits of liability were exhausted. A nuclear energy liability policy is a policy issued by:

(a) Nuclear Energy Liability Insurance Association;
(b) Mutual Atomic Energy Liability Underwriters;
(c) Nuclear Insurance Association of Canada

or any of their successors.

9. Liability arising from serving on a board of directors, or as an officer of an organization. This exclusion does not apply if the service is performed for a charitable, religious or civic non-profit organization and for which the *insured* receives no compensation.

10. *Personal injury* to any *insured*.

11. The transmission of a communicable disease by an *insured*.

12. *Personal injury* or *property damage* resulting from an uninsured or underinsured motorist claim unless a premium is shown for the uninsured or underinsured motorist coverage in the declarations.

13. *Day care* services unless covered by *primary insurance*.

14. Sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person by or at the direction of an *insured*, an *insured's* employee or any other person at an *insured's* direction.

15. The use of any motor vehicle or *watercraft*, other than a sailboat, in preparing for or participating in any official or prearranged speed contest.

16. An award of punitive or exemplary damages.

17. War as defined in the underlying auto policy.

18. The possession, use, sale or manufacture by any person of a controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A., sections 811 and 812. This exclusion does not apply to the legitimate use of prescription drugs as prescribed by a properly licensed medical practitioner.

19. The escape of fuel from a fuel system including storage tanks located under or above the ground.

20. The ownership, maintenance, use, loading or unloading of *personal watercraft*.

21. The ownership, maintenance, use, loading or unloading of a snowmobile.

22. Discrimination because of race, creed, color or national origin.

**PART IV - LIMITS OF LIABILITY**

Regardless of the number of *insureds*, claims or injured persons, the most we pay as *damages* resulting from one *occurrence*, including *damages* for care and loss of services, shall not exceed the amount in Item 1. of the *declarations*, subject to the following:

1. If both *primary insurance* and this policy cover an *occurrence*, we pay only those *damages* which exceed the liability limits in Item V. of the *declarations*, or any applicable primary policy, whichever is greater.

2. If *primary insurance* is not in force at the time of loss, or its liability limits are less than shown in Item V. of the *declarations*, we pay only those *damages* which exceed the liability limits in Item V. of the *declarations*.

3. If a primary insurer does not pay because of:

(a) bankruptcy; or
(b) insolvency; or
(c) an *insured's* failure to comply with a provision of *primary insurance*;

we pay only those *damages* which exceed the liability limits in Item V. of the *declarations*, or any applicable primary policy, whichever is greater.

4. If an occurrence results in *personal injury* or *property damage*, and:

(a) is not covered under the terms and conditions of *your primary insurance*, but
(b) is covered by this policy,

we pay only those damages which exceed *your retained limit*.

This insurance applies separately to each *insured*. This provision shall not increase our liability limit for one *occurrence*.

**PART V - DEFENSE OF SUITS NOT COVERED BY OTHER INSURANCE**

1. If the required *primary insurance*:

(a) is in force but does not cover *personal injury* or *property damage* due to the nature of the claim against *you*, and this policy does provide coverage, we will provide defense of suits in excess of the *retained limit*
(b) is in force but does not cover *personal injury* or *property damage* for any other reason, and this policy does provide coverage, we have the right to provide defense. But we are not obligated to defend unless the *personal injury* or *property*

damage alleged in the suit exceeds the required limit of *primary insurance* shown in Item 5. of the *declarations*.

2. When we provide defense, we will:

(a) defend an *insured* against a claim or suit for damages arising out of an *occurrence*, We may investigate and settle a claim or suit we feel is appropriate;

(b) pay costs taxed against an *insured* in a suit we defend;

(c) pay interest accruing after a judgment is entered in a suit we defend; our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed *our* liability limit;

(d) pay premiums on bonds required in a suit we defend; however, we will pay premiums for appeal bonds only from judgments from which we authorize an appeal. The bond amounts shall not exceed *our* liability limit. We pay the cost of bail bonds required of an *insured* because of an accident or a traffic law violation. We are not required to apply for or furnish bonds;

(e) pay reasonable expenses an *insured* incurs at *our* request in assisting *us* in the investigation or defense of a claim or suit. Expenses include actual loss of earnings (not other income) up to $100 per day or $5,000 total.

When we defend, we pay amounts incurred, except settlement of claims or suits for *damages*, in addition to *our* liability limit, whether or not the suit is covered by other insurance.

An *insured* shall promptly repay *us* for *damages* we paid within the *retained limit*.

PART VI - CONDITIONS

1. Duties after *Occurrence*, Claim or Suit

(a) If an *occurrence* is likely to involve *us* under this policy an *insured* shall, as promptly as reasonably possible, advise of:

(1) how, when and where the *occurrence* took place; and

(2) names and addresses of the injured and all witnesses.

(b) If information regarding a claim is received or if legal action is begun, an *insured* must immediately send *us* a copy of every:

(1) notice;
(2) demand;
(3) report;
(4) summons; or
(5) other legal papers.

(c) An *insured* must cooperate with *us* in the investigation, defense and settlement of a claim or suit.

(d) An *insured* must comply with the policy provisions of the *primary insurance*.

(e) Notice given by or on behalf of an *insured* or written notice by or on behalf of the injured person or any other claimant to any authorized representative or licensed agent of ours in New York, with particulars sufficient to identify the *insured*, shall be deemed notice to *us*.

2. Defense and Settlement. Except as provided in Part V., we are not required to take charge of the investigation, defense or settlement of a claim or suit. We have the right at any time to join an *insured* or the primary insurers in the investigation, defense and settlement of a claim or suit. We may investigate and settle any claim.

We have the right and duty to defend any claim or suit seeking damages, even if the allegations of the claim or suit are groundless, false or fraudulent. This duty would apply only if the *primary insurance* policy does not have a duty to defend.

3. Appeals. We may appeal a judgment in excess of the applicable *primary insurance* limit or the *retained limit*. We pay all:

(a) costs;
(b) taxes;
(c) expenses; and
(d) interest

for which an *insured* is legally liable and which are not covered by a *primary insurance* policy. Our liability for damages does not exceed *our* liability limit for one *occurrence* plus the cost and expense of the appeal.

4. Suit Against *Us*. No action shall be brought against *us*:

(a) unless an *insured* has complied with the policy provisions; and

(b) until the obligation of an *insured* has been determined by final judgment or by agreement signed by us.

No one shall have a right to join *us* as a party to an action against an *insured*.

5. Other Insurance. This insurance is excess over any insurance which covers a loss under:

(a) your *primary insurance*; or
(b) any other insurance policies.

6. Our Right To Recover Payment. If payment is made by *us*, *we* will join an *insured* and any primary insurer in exercising an *insured's* rights of recovery against any party. An *insured* shall not prejudice such rights after loss. Recoveries shall be made in the following order:

(a) repay the parties (including an *insured*) who paid in excess of *our* liability limit;

(b) repay *us* the amount we paid; and

(c) repay the parties (including an *insured*) to whom this insurance is excess, if they are entitled to any remainder.

A different distribution may be made to settle a claim or suit if all parties agree.

Reasonable expenses of obtaining recovery shall be divided among all parties in the ratio of their losses for which recovery is sought.

**7. Assignment.** Your rights and duties under this policy shall not be assigned without our written consent.

**8.** Policy Period and Territory. We cover *personal injury* and *property damage* which takes place anywhere during the time this policy is in force. If *you* travel outside the United States, *you* must maintain the equivalent of *your* primary insurance. We pay only those *damages* which exceed the liability limits in Item V of the *declarations*, or any applicable primary policy, whichever is greater.

**9. Termination.**

(a) Cancellation

You may cancel this policy by returning it to us or by notifying *us* in writing of the cancellation date. Any return premium will be calculated on a pro-rata basis.

We may cancel this policy for non-payment of premium by notifying *you* in writing at least 15 days in advance.

If this policy is not a renewal, and has been in effect less than 60 days, we may cancel for any reason by notifying *you* in writing at least 30 days in advance.

If this policy is a renewal, or has been in effect 60 days or more, we may cancel the policy only for the following reasons:

(1) non-payment of premium;
(2) conviction of a crime arising out of acts increasing the hazard insured against;
(3) discovery of fraud or material misrepresentation in obtaining the policy or in the presentation of a claim thereunder;
(4) discovery of willful or reckless acts or omissions increasing the hazard insured against;
(5) physical changes in the property insured occurring after issuance or last annual anniversary date of the policy which result in the property becoming uninsurable in accordance with the insurer's objective, uniformly applied underwriting standards in effect at the time the policy was issued or last voluntarily renewed;
(6) a determination by the Superintendent of Insurance that the continuation of the policy would violate or would place the insurer in violation of the New York Insurance Law; or
(7) *you* fail to provide *us* with renewal, underwriting or rating data as we may require.

If this policy is cancelled, any return premium will be refunded within a reasonable time after the cancellation date. Payment or tender of unearned premium is not a condition of cancellation. When we cancel, the return premium will be pro-rata.

(b) Non-Renewal

You have the right to renew this policy if we do not advise *you* of our decision not to renew at least forty-five days but no more than 60 days prior to the day the policy expires.

(c) *Our* notice may be delivered or mailed to *you* at the address in the *declarations*.

(d) Proof of mailing is sufficient proof of notice.

(e) If any provision of 9.(a),(b), (c) or (d) above are in conflict with the law in *your* state, we will comply with that law.

**10.** Changes. The terms of this policy may not be changed or waived except by endorsement by *us*.

**11.** Concealment or Fraud. We do not provide coverage for an *insured* who purposely conceals or misrepresents any material fact or circumstance relating to this insurance.

**12.** Death. If *you* or a resident of *your* household dies, we cover:

(a) with respect to *your* property, the person in temporary custody of the property until a legal representative is appointed.

(b) the legal representative of the deceased but only with respect to the property of the deceased covered under the policy at the time of death.

**13.** Any terms of this policy in conflict with the statutes of *your* state are amended to conform to those statutes.

**14.** *You* will maintain *your* *primary insurance* and notify *us* of any changes in *your* *primary insurance* within 30 days.

**15.** In the event of a loss covered by this policy, *we* pay only those *damages* which exceed the limits of liability shown in Item V. of the *declarations* or the limits of liability shown in any applicable primary policy, whichever is greater.

**16.** Newly Acquired Property

*You* agree with *us*, as a condition of coverage under this policy, to:

(a) notify *us* within 30 days of the date *you* acquire:

(1) property;
(2) autos; or
(3) watercraft or other recreational vehicles.

Further, coverage shall not be afforded under this policy unless:

(a) the newly acquired or additional:

(1) property;
(2) autos; or
(3) watercraft or other recreational vehicles

PPA-1NY (7-00)      Page 5 of 6

are indicated on the *declarations* and *primary insurance* is maintained with a minimum limit of liability equal to the limits under Section V. of the *declarations.*

17. The insolvency or bankruptcy of the *insured* or the insolvency of an *insured's* estate shall not release us from the payment of *damages* for injury sustained or loss occasioned during the term and within the coverage of this policy.

J. C. Stewart
Secretary

O. M. Nicely
President

GOVERNMENT EMPLOYEES INSURANCE COMPANY
HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-8789

# GEICO

Government Employees Insurance Company
Policy Number: P 6103627

*Your* policy is amended as follows:

GEICO'S PERSONAL UMBRELLA
POLICY AMENDMENT
NEW YORK

## PART I - DEFINITIONS

Definition 7, *Insured* is revised as follows:

*Insured* means:

(a) *You* and *your* spouse if a resident of *your* household; but with respect to an *auto you* do not own or lease, coverage applies only if the *auto* is insured by a primary auto policy.

(b) *Relatives* residing in *your* household as well as a household resident under age 21 in the care and custody of *your* or *your* spouse. With respect to a motor vehicle, such person is an *insured* only if the motor vehicle is insured by a primary policy and shown on the *declarations* of this Personal Umbrella Policy.

(c). Persons not identified in 7.(a), or 7.(b). above, if using an *auto* or *watercraft* owned or furnished for the regular use of a person defined in 7.(a), or 7.(b), above, provided the use is with permission. With respect to an *auto*, such person is an *insured* only if the *auto* is insured by a primary policy and shown on the *declarations* of this Personal Umbrella Policy.

(d) Any person or organization legally responsible for the acts or omissions of a person for whom coverage is afforded under the policy while that person is using an *auto* or *watercraft* insured by a primary policy and shown on the *declarations* of this Personal Umbrella Policy.

(e) Any person or organization legally responsible for damages caused by animals owned by *you*, *your* spouse, and residents of *your* household who are *relatives* or persons under *your* care and custody.

(f) The following are not *insureds*:

(1) The owner or lessor (or their agents or employees) of:
  (i) An *auto*;
  (ii) Recreational vehicle; or
  (iii) *Watercraft*
  loaned to or hired for use by *you* or on *your* behalf.

(2) A person other than an *insured* shown in 7.(a) or 7.(b) above using an *auto* or *watercraft* while employed in the business of:
  (i) Selling;
  (ii) Servicing;
  (iii) Repairing;
  (iv) Maintaining;
  (v) Parking;
  (vi) Docking;
  (vii) Mooring; or
  (viii) Storing
  *autos* or *watercraft*. This includes a person other than an *insured* or organization employing or engaging a person using the *autos* or *watercraft* in the above activities.

(3) A person or organization with custody of animals owned by an *insured* in 7.(a) or 7.(b) above, in the course of any business or without the consent of an *insured* in 7.(a) or 7.(b) above.

The following definition is added:

*Relative* means a person related to *you* who resides in *your* household.

## PART III - EXCLUSIONS

The following exclusions are revised as follows:

4. Acts committed by or at any *insured's* direction with intent to cause *personal injury* or *property damage*. This exclusion does not apply to *personal injury* or *property damage* resulting from an act committed by an *insured* with reasonable and legally permissible force to protect persons and property from injury or damage.

9. Liability arising from serving on a board of directors, or as an officer of an organization. This exclusion does not apply:
  (a) If the service is performed for a charitable, religious or civic non-profit organization; and
  (b) Coverage for the *insured's* service is provided by *primary insurance*; and
  (c) The *insured* receives no compensation for such service.

PPE1-NYA (01-09)

Page 1 of 2

The following exclusions are added:

23. The maintenance or use of any motorized vehicle that is designed for use principally off public roads that is not registered for use on public roads.

24. *Personal injury* that results from attack by a dog, or resulting from the ownership, maintenance or use of a swimming pool, diving board, or trampoline unless covered by *primary insurance*.

25. *Personal injury* or *property damage* that results from slander of title.

**PART VI - CONDITIONS**

Condition 8. Policy Period and Territory

The first sentence is replaced with the following:

We cover *personal injury* and *property damage* which takes place anywhere during the time this policy is in force, however, we do not cover *damages* resulting from *your* ownership of real property located outside of the United States of America, its territories or possessions, or Canada.

We affirm this amendment.

J. G. Stewart
Secretary

O. M. Nicely
President

**EXHIBIT C**

# GEICO

**geico.com**

GEICO INDEMNITY COMPANY

ONE GEICO PLAZA, WASHINGTON, DC 20047-0001

**TEL: 1-800-841-3000**
**FAX: 1-716-408-9118**

U-31-DP-1 (7-07)

## Policy Number:  4079-17-12-54

---

**FAMILY AUTOMOBILE POLICY ENDORSEMENT DECLARATIONS**

This is a description of your coverage. Please keep for your records.

Item 1:  Named Insured and Address

MARYANN BEVERLY DIONISIO
PO BOX 294
WILTON CT  06897-0294

E-Mail Address: MSPUPPER@AOL.COM

| | | | |
|---|---|---|---|
| **Date Issued:** **04-09-09** | ENDORSEMENT EFFECTIVE: | | 04-25-09 |
| Policy Period From   04-25-09 | to  10-25-09 | 12:01 a.m. Local time at the address of the named insured. | |

The insured vehicle(s) will be regularly garaged in the town and state shown in Item 1, except as noted in the Vehicle Segment.

**Contract Type:**  A30CT

CONTRACT AMENDMENTS:     ALL VEHICLES - A30CT CRA233CT

UNIT ENDORSEMENTS:     CRUE168C (VEH 1); CRA115 (VEH 1,2); CRA280A (VEH 1);
CRA431 (VEH 1,2); CRUE195 (VEH 1); UE316 (VEH 1)

---

### ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ IMPORTANT MESSAGES ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

-Please review the reverse side of this page for coverage and discount information.

-The GEICO Property Agency can arrange for your homeowner's, renter's and condominium owner's insurance needs.
Just call toll-free at 1-888-306-9500. Refinancing?  Let us provide the new Homeowner's Policy you need.

-A credit or discount has been applied to this policy: MULTI-CAR.

-The 2003 HYUNDAI has been added to your policy.

-NATALIE R DIONISIO was added as an operator on your policy.

-The attached billing also includes this adjustment for the period of 4/9/2009 to 4/25/2009. The attached billing
also includes this adjustment for the period of 4/9/09-4/25/09.

---

| Date Issued: 04-09-09 | T-7 | Policy Number: 4079-17-12-54 |
|---|---|---|

**VEHICLE**

|  |  |  | **RATED LOCATION** | **CLASS** |
|---|---|---|---|---|
| 1 08 | BMW | WBAWV53518P078691 | NORWALK CT 06854 | 0 -M -6-SFP -L |
| 2 03 | HYUNDAI | KMHHN65F83U075459 | NORWALK CT 06854 | 2 -N -18SFP -L |

| **COVERAGES**<br>Coverage applies where a premium or 0.00 is shown for the vehicle. | **LIMITS OR<br>DEDUCTIBLES** | **Vehicle 1** | **PREMIUMS**<br>**Vehicle 2** | **Vehicle** |
|---|---|---|---|---|
| BODILY INJURY LIABILITY | | | | |
| EACH PERSON/EACH OCCURRENCE | $250,000/$500,000 | 202.60 | 729.80 | |
| PROPERTY DAMAGE LIABILITY | $50,000 | 91.40 | 349.80 | |
| MEDICAL PAYMENTS | $5,000 | 45.50 | 122.00 | |
| UNINSURED/UNDERINSURED MOTORISTS<br>NON-STACKED | | | | |
| EACH PERSON/EACH OCCURRENCE | $250,000/$500,000 | 96.90 | 96.90 | |
| COMPREHENSIVE | $500 DED | | 122.20 | |
| EMERGENCY ROAD SERVICE | FULL | 6.40 | 9.10 | |
| RENTAL REIMBURSEMENT | $30 PER DAY<br>$900 MAX | 27.60 | 27.60 | |
| MULTI-RISK | | | | |
| INCLUDES: COMPREHENSIVE | $500 DED | 94.90 | | |
| COLLISION | $500 DED | 459.90 | | |
| MECHANICAL BREAKDOWN | $250 DED | 53.30 | | |

| SIX MONTH PREMIUM PER VEHICLE: | $ 1078.50 $ 1457.40 |
|---|---|

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

**Premiums for these vehicles are based on the following Discounts and/or Surcharges:**

DISCOUNTS    NEW CAR (VEH 1); MULTI-CAR (VEH 1,2)

SURCHARGES  ACCIDENT AND/OR CONVICTION AND/OR INEXPERIENCED OPERATOR
                        (VEH 2)

| Lienholder Vehicle  1 | Lienholder Vehicle | Lienholder Vehicle |
|---|---|---|
| BMW FIANCIAL SERVICES | | |

# GEICO

**ONE GEICO PLAZA**
**Washington, D. C. 20076-0001**
**Telephone: 1-800-841-3000**

---

# Connecticut
# Family
# Automobile
# Insurance
# Policy

---

- Government Employees Insurance Company
- GEICO Casualty Company
- GEICO General Insurance Company
- GEICO Indemnity Company

# YOUR POLICY INDEX

Page

**SECTION I - LIABILITY COVERAGES**

Definition of Terms.................................................3
Losses We Will Pay For You ................................3
Additional Payments We Will Make For You.......4
   Legal Expenses and Court Costs
   Bail and Appeal Bonds
   First Aid Expenses
Exclusions:  When These Coverages
   Do Not Apply ....................................................4
Persons Insured:  Who Is Covered .......................4
Financial Responsibility Laws ..............................5
Out of State Insurance ..........................................5
Limits of Our Liability For a Loss ........................5
When You Have "Other Insurance" For a Loss......5
Conditions.............................................................5
   Notice:  Reporting Your Loss If Suit is
      Brought Against You
   Your Assistance and Cooperation
   Action Against Us
   Our Rights of Recovery
   Two or More Automobiles Insured
      Under This Policy

**SECTION II - AUTO MEDICAL PAYMENTS**

Definition of Terms.................................................6
Payments We Will Make ........................................6
Exclusions:  When Section II Does Not Apply......6
Limits of Our Liability For a Loss .........................6
Other Insurance .....................................................6
Conditions.............................................................7
   Notice
   Two or More Autos
   Action Against Us
   Medical Reports - Proof and Payment of Claims

**SECTION III - PHYSICAL DAMAGE COVERAGES**

Definitions of Terms..............................................7
Losses We Will Pay For You
   Comprehensive Coverage ..................................8
   Collision Coverage ............................................8
Additional Payments We Will Make For You.......8
   Car Rental If Your Car is Stolen
Exclusions:  When These Coverages
   Do Not Apply ....................................................8
Limits of Our Liability For a Loss .........................9
When You Have "Other Insurance" For a Loss......9
Conditions.............................................................9
   Notice:  Reporting Your Loss

Page

Two or More Automobiles Insured Under
   This Policy
Your Assistance and Cooperation
Action Against Us
Your Duties in Event of Loss
Appraisal of Amount of Loss
Payment of Loss
No Benefit to Bailee
Our Rights of Recovery

**SECTION IV - UNINSURED MOTORISTS AND UNDER INSURED MOTORISTS COVERAGE**

Definition of Terms...............................................10
Losses We Pay ....................................................11
Exclusions:  When These Coverages
   Do Not Apply ..................................................11
Limits of Our Liability For a Loss .......................11
When You Have "Other Insurance" For a Loss....12
Our Right of Recovery .........................................12
Conditions:...........................................................12
   Notice:  Reporting Your Loss
   Your Assistance and Cooperation
   Action Against Us
   Proof of Claim - Medical Reports
   Who Receives "Payment of Losses"

**SECTION V - GENERAL CONDITIONS**

Policy Period - Territory:
   When and Where You Have Coverage ..............13
Premium:  How Adjustments Are Made...............13
Changes to Your Policy .......................................13
Assignment of Your Interest in This
   Policy to Others...............................................13
Claims or Suits
Cancellation of the Policy: ...................................13
   By You
   By Us
   By Us Is Limited
Renewal of Your Policy........................................14
Other Insurance ...................................................14
Dividend Provisions .............................................14
Declarations:  Your Agreements ..........................14
Concealment or Fraud ..........................................14
Examination Under Oath.......................................14
Disposal of Vehicle..............................................14
Terms of Policy Conformed To Statutes ...............14

**SECTION VI AMENDMENTS AND ENDORSEMENTS**

Special Endorsement - United States Government
Employees ............................................................15

A-30CT (10-01)

Whenever, "he," "his," "him," or "himself" appears in this policy, *you* may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you*. Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

## SECTION I - LIABILITY COVERAGES

***Your*** Protection Against Claims From Others Bodily Injury Liability and Property Damage Liability

### DEFINITIONS

The words in italics in Section I of this policy are defined below.

**1. *"Auto business"*** means the business of:

    (a) selling;
    (b) repairing;
    (c) servicing;
    (d) storing;
    (e) transporting; or
    (f) parking of autos.

**2. *"Bodily injury"*** means bodily injury to a person, and resulting sickness, disease or death.

**3. *"Farm auto"*** means a truck type vehicle with a load capacity of 2000 pounds or less, not used commercially other than for farming.

**4. *"Insured"*** means a person or organization described under "persons insured."

**5. *"Non-owned auto"*** means an automobile or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

**6. *"Owned auto"*** means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;
    (b) a *trailer* owned by *you*;
    (c) *a private passenger*, *farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which you enter into a lease of six months or more during the policy period if

        (i) it replaces an *owned auto* as defined in (a) above; or
        (ii) we insure all *private passenger*, *farm* and *utility autos* owned or leased by *you* on the date of acquisition, and *you* ask us to add it to the policy within 30 days from the date of acquisition.

    (d) a *temporary substitute auto*.

**7. *"Private passenger auto"*** means a four-wheel private passenger, station wagon or jeep-type auto.

**8. *"Relative"*** means a person related to *you* who resides in *your* household with *you*.

**9. *"Temporary substitute auto"*** means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This auto must be used as a substitute for the *owned auto* or *trailer* which is out of normal use because of its:

    (a) breakdown;
    (b) repair;
    (c) servicing;
    (d) loss; or
    (e) destruction.

**10. *"Trailer"*** means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger*, *farm* or *utility auto* .

**11. *"Utility auto"*** means a vehicle, other than a *farm auto*, with a load capacity of 2000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

**12. *"War"*** means:

    (a) armed conflict between nations, whether or not declared;
    (b) civil war;
    (c) insurrection;
    (d) rebellion; or
    (e) revolution.

**13. *"You"*** and *"your"* means:

    (a) the "named insured" shown in the declarations; and
    (b) the "named insured's" spouse if a resident of the same household.

## LOSSES WE WILL PAY FOR YOU UNDER SECTION I

We will pay damages an *insured* becomes legally obligated to pay because of:

**1.** *bodily injury*, sustained by a person, and

**2.** damage to or destruction of property including its loss of use.

The *bodily injury* or damage or destruction of property must arise out of the:

    (a) ownership;
    (b) maintenance; or
    (c) use (including loading and unloading)

of the *owned* auto or a *non-owned* auto.

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER SECTION I

**1.** All investigative and legal costs we incur.

**2.** All court costs charged to an **insured** in a covered law suit.

**3.** All interest accruing on that amount of a judgment which is within our limit of liability, accruing after the entry of judgment, until we have paid, offered, or deposited in court that part of a judgment not exceeding the limit of our liability.

**4.** Costs for appeal bonds in a suit we appeal or costs for bonds to release attachments. At **your** request we will arrange for the issuance of a bond to release an attachment. The face amount of these bonds may not exceed the applicable limit of liability.

**5.** Costs for bail bonds paid for an **insured** due to traffic law violations arising out of the use of an insured auto. We will not pay more than $250 per bail bond.

**6.** Costs incurred by an **insured** for first aid to others at the time of an accident which involved an insured auto.

**7.** Loss of earnings up to $50 a day, but not other income, if an **insured** attends hearings and trials at our request.

**8.** All reasonable costs incurred by an **insured** at our request.

## EXCLUSIONS

### WHEN COVERAGE UNDER SECTION I DOES NOT APPLY

We will not defend any suit for damage if one or more of the exclusions listed below applies:

**1.** Section I does not apply to any vehicle used to carry passengers or goods for hire. A vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** **Bodily injury** or property damage caused intentionally by or at the direction of an **insured** is not covered.

**3.** We do not cover **bodily injury** or property damage that is insured under a nuclear liability policy.

**4.** **Bodily injury** or property damage arising from the operation of farm machinery is not covered.

**5.** **Bodily injury** to an **insured's** employee arising out of and in the course of employment by an **insured** is not covered.

We cover **bodily injury** to an **insured's** domestic employee unless benefits are payable or are required to be provided under a worker's or workmen's compensation law.

**6.** We do not cover any employee for **bodily injury** to a fellow employee sustained in the course of his employment if worker's compensation or other similar coverage

is available. This does not apply to **you** and any of **your** fellow employees.

**7.** An **owned auto** while used by a person (other than **you,** any partner agent or employee of **yours** or any **relative**) when he is employed or otherwise engaged in the **auto business** is not covered if the accident arises out of that business.

**8.** We do not cover a **non-owned auto** while maintained or used by a person while he is employed or otherwise engaged in (1) any **auto business** or (2) any other business or occupation of any **insured** if the accident arises out of that business or occupation, except a **non-owned private passenger auto** used by **you**, **your** chauffeur or domestic servant, while engaged in such other business.

We do cover a **non-owned private passenger auto** used by **you**, **your** chauffeur or domestic servant, while engaged in the business of an **insured.**

**9.** We do not cover damage to:

   (a)  property owned or transported by an **insured**; or
   (b)  property rented to or in the care of an **insured** other than a residence or private garage.

**10.**   We do not cover an auto **you** acquire during the policy period if **you** have purchased other liability insurance for it.

**11.**   We do not cover:

   (a)  the United States of America or any of its Agencies;
   (b)  any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

**12.**  We do not cover **bodily injury** to any passenger while occupying a motorcycle.

**13.**  We do not cover **bodily injury** or property damage that results from the operation of a **non-owned auto** or **temporary substitute auto** that is designed for use principally off public roads that is not registered for use on public roads.

**14.**  We do not cover punitive or exemplary damages awarded due to a loss where the **insured** was legally intoxicated or under the influence of illegal narcotics or narcotics used illegally by the **insured** at the time of loss.

## PERSONS INSURED

### WHO IS COVERED BY SECTION I

The following are **insureds** with regard to an **owned auto:**

**1.**  **you** and **your relatives** unless any such person is excluded by endorsement;

**2.**  persons using the auto with **your** permission. The actual use must be within the scope of that permission;

**3.** any other person or organization for his or its liability because of acts or omissions of an *insured* under 1 or 2 above.

The following are *insureds* with regard to an *non-owned auto:*

**1.** (a) *You;*

(b) *Your relatives* when using a *private passenger auto, utility auto, farm auto,* or *trailer.*

Such use by *you or your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

**2.** A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1 above.

The limits of liability stated in the declarations are the most we will pay regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees repay us for payment which we would not have had had to make except for this agreement.

## OUT OF STATE INSURANCE

When this policy applies to the operation of a motor vehicle outside of *your* state, we will to increase *your* coverages to the extent required of out-of-state motorists by local law. This added coverage will be reduced to the extent that *you* are covered by other insurance. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

**1.** The limit of bodily injury liability shown in the declarations for "each person" is the most we will pay for all damages, including those for care and loss of services, because of *bodily injury* to one person in in of one occurrence.

**2.** Subject to the "each person" limit in 1. above, the limit of bodily injury liability shown in the declarations for "each occurrence" is the most we will pay for all damages, including those for care and loss of services, because of *bodily injury* to two or more persons in any one occurrence.

**3.** The limit of property damage liability for "each occurrence" shown in the declarations is the most we will pay for all damages to property of one or more persons or organizations as the result of any one occurrence. The damages, including loss of its use, must arise out of injury to or destruction of that property.

## OTHER INSURANCE

If the *insured* has other insurance for a loss covered by Section I, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance. However, this coverage is primary if the *insured* is operating an auto with dealer's or repairer's plates which is loaned to him while his auto is in the dealer's or repairer's shop for service or repair.

## CONDITIONS

### THE FOLLOWING CONDITIONS APPLY TO SECTION I

**1.** NOTICE

As soon as possible after an occurrence, we or our authorized agent must be notified. We may ask that the notice be in writing. The notice must provide the following details:

(a) the identity of the *insured*;
(b) the time, place and details of the occurrence;
(c) the names and addresses of the injured, and
(d) the names and addresses of any witnesses;
(e) the names of the owners of any damaged property; and
(f) the description and location of the damaged property.

The *insured*, must promptly send us any legal papers he receives if a claim or suit is brought against him.

**2.** ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and help us, if we ask:

(a) in the investigation of the claim;
(b) in making settlements;
(c) in the conduct of suits; and
(d) in enforcing any right of contribution or indemnity against any person or organization legally responsible for the *bodily injury* or property damage; and
(e) at trials and hearings;
(f) in securing and giving evidence; and
(g) by obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**3.** ACTION AGAINST US

We cannot be sued:

(a) unless the *insured* has complied with all the policy's terms and conditions; and
(b) until the amount of the *insured's* obligation to pay has been finally determined, either:

(i) by a final judgment against the **insured** after actual trial; or

(ii) by written agreement of the **insured**, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the **insured**, has a right under this policy to make us a defendant in an action to determine the **insured's** liability.

Bankruptcy or insolvency of the **insured** or his estate will not relieve us of our duties.

**4.** OUR RIGHTS OF RECOVERY

When payment is made under this policy, we will be entitled to all the **insured's** rights of recovery against others. The **insured** will help us to enforce these rights. The **insured** will do nothing after loss to prejudice these rights.

This means we will have the right to sue or otherwise recover the loss from anyone else who may be held responsible.

**5.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached **trailer** are considered to be one auto.

## SECTION II - AUTO MEDICAL PAYMENTS

*This section applies only if a premium is shown on the policy declarations for "Auto Medical Payments" coverage.*

## DEFINITIONS

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, **"occupying"** means:

(a) in;
(b) upon;
(c) entering into; or
(d) alighting from.

## PAYMENTS WE WILL MAKE

Under this Coverage, we will pay all reasonable expenses actually incurred by an **insured** within one year from the date of accident for necessary:

(a) medical, surgical, x-ray services;
(b) dental services;
(c) prosthetic devices;
(d) ambulance services;
(e) hospital services; and
(f) funeral services.

The one year limit does not apply to funeral services.

This Coverage applies to:

**1.** **you** and each **relative** who sustains **bodily injury** caused by accident:

(a) while **occupying** the **owned auto**; or
(b) while **occupying** a **non-owned auto** if **you** or **your relative** reasonably believe **you** have the owner's permission to use the auto and the use is within the scope of that permission; or
(c) when struck as a pedestrian by an auto or **trailer**.

**2.** any other person who sustains **bodily injury** caused by accident while **occupying** the **owned auto** while being used by **you**, a resident of **your** household, or other persons with **your** permission.

## EXCLUSIONS

### When Section II Does Not Apply

**1.** There is no coverage for **bodily injury** sustained by any occupant of an **owned auto** used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** There is no coverage for an **insured** while **occupying** a vehicle located for use as a residence or premises.

**3.** **You** and **your relatives** are not covered for **bodily injury** sustained while **occupying** or when struck by:

(a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
(b) a vehicle operated on rails or crawler-treads.

**4.** There is no coverage for persons employed in the **auto business**, if the accident arises out of that business and if benefits are required to be provided under a worker's compensation law.

**5.** There is no coverage for **bodily injury** sustained due to **war.**

**6.** The United States of America or any of its Agencies are not covered as an **insured,** a third party beneficiary, or otherwise.

## LIMIT OF LIABILITY

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains **bodily injury** in one accident. This applies regardless of the number of persons insured or the number of autos or **trailers** to which this policy applies.

## OTHER INSURANCE

If the **insured** has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide to a person who sustains **bodily injury** while **occupying** a vehicle **you** do not own shall be excess over any other valid and collectible insurance.

This insurance shall be primary over any other health insurance as defined in the Connecticut General Statutes, including, but not limited to, coverage provided by plans subject to ERISA.

## CONDITIONS

The following conditions apply to this Coverage:

**1.** NOTICE

As soon as possible after an accident, written notice must be given us or our authorized agent stating:

(a) the identity of the *insured*;
(b) the time, place and details of the accident; and
(c) the names and addresses of the injured, and of any witnesses.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

**3.** ACTION AGAINST US

Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

**4.** MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

## SECTION III - PHYSICAL DAMAGE COVERAGES

*Your* Protection for Loss or Damage To *Your* Car
DEFINITIONS

The following definitions of terms under Section I apply to Section III also.

1. **"Auto business"**
2. **"Farm auto"**
3. **"Private Passenger auto"**
4. **"Relative"**
5. **"Temporary substitute auto"**
6. **"Utility auto"**
7. **"You"** and **"your"**
8. **"War"**

Under this Section, the following special definitions apply:

**1.** **"Actual Cash Value"** is the replacement cost of the auto or property less *depreciation* or *betterment*.

**2.** **"Betterment"** is improvement of the auto or property to value greater than its pre-loss condition.

**3.** **"Collision"** means *loss* caused by:

(a) upset of the covered auto; or
(b) its impact with another object, including an attached vehicle.

**4.** **"Comprehensive"** means *loss* caused other than by *collision* and includes but is not limited to the following causes:

a. missiles;
b. falling objects;
c. fire;
d. lightning;
e. theft;
f. larceny;
g. explosion;
h. earthquake;
i. windstorm;
j. hail;
k. water;
l. flood;
m. malicious mischief;
n. vandalism;
o. riot;
p. civil commotion; or
q. colliding with a bird or animal.

**5.** **"Depreciation"** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

**6.** **"Insured"** means:

(a) regarding the *owned auto*:

(i) *you* and *your relatives;*
(ii) a person or organization maintaining, using or having custody of the auto with *your* permission; of his use must be within the scope of that permission.

(b) regarding a *non-owned auto*; *you* and *your relatives* using the auto, if the actual operation or use is with or reasonably believed to be with the permission of the owner. The use must be within the scope of that permission.

**7.** **"Loss"** means direct and accidental loss of or damage to:

(a) the auto;
(b) its equipment; or
(c) other insured property.

8. **"Non-owned auto"** means a **private passenger auto, utility auto, farm auto,** or **trailer** not owned by or furnished for regular use or by **you** or **your relatives**, except a **temporary substitute auto**. **You** or **your relative** must be using the auto or **trailer** within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

9. **"Owned auto"** means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;

    (b) a **trailer** owned by **you**;

    (c) a **private passenger**, **farm** or **utility auto**, ownership of which **you** acquire during the policy period or for which **you** enter into a lease of six months or more during the policy period, if

      (i) it replaces an **owned auto** as described in (a) above, or

      (ii) we insure all **private passenger**, **farm**, **utility autos** and **trailers** owned or leased by **you** on the date of acquisition. **You** must ask us to add it to the policy within 30 days from the date of acquisition.

    (d) a **temporary substitute auto**.

10. **"Trailer"** means a trailer designed for use with a **private passenger auto** and not used as a:

    (a) home;
    (b) office;
    (c) store;
    (d) display; or
    (e) passenger trailer.

## LOSSES WE WILL PAY FOR *YOU*

### Comprehensive (Excluding Collision)

**1.** We will pay for each **loss,** less the applicable deductible, caused other than by **collision** to the **owned** or **non-owned auto**. This includes glass breakage.

No deductible will apply to **loss** caused by smoke, smudge, or damage sustained while the vehicle is being transported on any conveyance.

At the option of the **insured,** breakage of glass caused by **collision** may be paid under the collision coverage, if included in the policy.

**2.** We will pay, up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects, due to:

    (a) fire;
    (b) lightning;
    (c) flood;
    (d) falling objects;
    (e) earthquake;
    (f) explosion; or
    (g) theft of the entire auto.

The property must by owned by **you** or a **relative** and must be in or upon an **owned auto**.

No deductible will apply to **loss** from fire or lightning.

**3.** **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

### Collision

**1.** We will pay for **collision loss** to the **owned** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

**2.** We will pay up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects due to a **collision**. The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

**3.** **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

**1.** We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the **loss**.

Reimbursement will not exceed $25.00 per day nor $750.00 per **loss**.

**2.** We will pay for **loss** to any of the following equipment (including **loss** to accessories and antenna):

    (a) car phone;
    (b) citizen's band radio;
    (c) two-way mobile radio;
    (d) scanning monitor receiver; or
    (e) device designed for the recording and/or reproduction of sound.

We will pay only if the equipment at the time of a **loss:**

    (a) is permanently installed in or upon an **owned auto;** and

    (b) that vehicle is insured under the appropriate coverage.

**3.** We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

## EXCLUSIONS

## WHEN THE PHYSICAL DAMAGE COVERAGES DO NOT APPLY

We do not cover:

**1.** An auto used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** *Loss* due to *war*.

**3.** *Loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

**4.** *Loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

**5.** Tires when they alone are damaged by *collision*.

**6.** *Loss* due to radioactivity.

**7.** *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.

**8.** *Loss* to any radar or laser detector.

**9.** *Trailers* when used for business or commercial purposes with vehicles other than *private passenger*, *farm* or *utility autos*.

**10.** *Loss* to an *owned auto* or *non-owned auto* that results from destruction or confiscation by governmental or civil authorities because *you*, a *relative* or anyone else in possession or custody of that vehicle was engaged in illegal activities.

### LIMIT OF LIABILITY

The most we will pay for *loss*:

**1.** is the *actual cash value* of the property at the time of the *loss*;

**2.** will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality; and will not include compensation for any diminution in the property's value that is claimed to result from the *loss;*

**3.** to personal effects arising out of one occurrence is $200;

**4.** to a *trailer* not owned by *you* is $500;

**5.** for custom options is limited to the *actual cash value* of equipment, furnishings or finishing (including paint) installed in or upon the auto only by the auto factory or an authorized auto dealer and included in the purchase price of the auto.

**"Actual cash value"** of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

### OTHER INSURANCE

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

### CONDITIONS
### THE FOLLOWING CONDITIONS APPLY TO SECTION III

**1.** NOTICE

As soon as possible after a *loss*, we or our authorized agent must be notified. We may ask that the notice be in writing. The notice must provide the following details:

> (a) the identity of the *insured;*
> (b) a description of the auto or *trailer*;
> (c) the time, place and details of the *loss*; and
> (d) the names and addresses of any witness.

In case of theft, the *insured* must promptly notify the police.

**2.** TWO OR MORE AUTOS

If this policy covers two or more *autos* or *trailers*, the limit of coverage and any deductibles apply separately to each.

**3.** ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and help us, if we ask:

> (a) in the investigation of the *loss*;
> (b) in making settlements;
> (c) in the conduct of suits; and
> (d) in enforcing any right of recovery against any legally responsible person or organization;
> (e) in attending trials and hearings;
> (f) in securing and giving evidence; and
> (g) in obtaining the attendance of witnesses.

**4.** ACTION AGAINST US

We cannot be sued:

> (a) unless the policy terms have been complied with; and
> (b) until 30 days after proof of loss is filed and the amount of *loss* is determined.

**5.** *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

> (a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. We will pay reasonable expenses incurred for this protection.
> (b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably need.
> (c) If we ask, exhibit the damaged property.

**6.** APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser.

The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser. Expenses of the appraisal and umpire will be shared equally by us and the *insured*.

We will not waive our rights by any of our acts relating to appraisal.

**7. PAYMENT OF *LOSS***

We may at our option:

(a) pay for the *loss*; or
(b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations. We will do so at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value. There will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

**8. NO BENEFIT TO BAILEE**

The insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

**9. OUR RIGHTS OF RECOVERY**

When payment is made under this policy, we will be entitled to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

**SECTION IV - UNINSURED MOTORIST AND UNDER-INSURED MOTORISTS COVERAGE.**

**Protection For *You* and *Your* Passengers For Injuries Caused By Uninsured/Underinsured and Hit-and-Run Motorists**

**DEFINITIONS**

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

**1. *"Hit-and-Run Auto"*** is a motor vehicle:

(a) causing *bodily injury* to an *insured* through physical contact with him or with an auto he is *occupying* at the time of the accident. If there is no physical contact with the hit-and-run auto, the *insured* must show, by an independent and disinterested witness that the *bodily injury* was the result of the actions of an unidentified motorist; and

(b) whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

(1) reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
(2) files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and
(3) makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

**2. *"Insured"*** means:

(a) *you;*
(b) *your* spouse if a resident of *your* household;
(c) any *relative* of (a) or (b) above who resides with *you* and who does not own a motor vehicle that is required to be insured provided this coverage shall be primary for any *relative* while *occupying* an auto described in the declarations and covered by the bodily injury liability coverage of this policy;
(d) any other person while *occupying* an *insured auto*; or
(e) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), (c) and (d) above; or
(f) any employee of the named insured while *occupying* an *insured auto* in the course of employment.

If there is more than one *insured,* our limits of liability will not be increased.

**3. *"Insured Auto"*** is an auto:

(a) described in the declarations and covered by the bodily injury liability coverage of this policy;
(b) which is a *temporary substitute auto*; or
(c) operated by *you* or *your* spouse if a resident of the same household.

But the term *"insured auto"* does not include:

(i) an auto used to carry passengers or goods for hire, except in a car pool;
(ii) an auto being used without the owner's permission; or
(iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

**4. *"Occupying"*** means:

(a) in;
(b) upon;
(c) entering into; or
(d) alighting from.

**5. *"State"*** includes:

(a) the District of Columbia;

(b) the territories and possessions of the United States; and

(c) the Provinces of Canada.

**6.** **"Underinsured Motor Vehicle"** means a motor vehicle including a motorcycle for which the total limits of all bodily injury liability insurance policies or bonds applicable at the time of the accident are less than the limits of insurance under this coverage.

The term **"Underinsured Motor Vehicle"** does not include:

(a) an **insured auto**;

(b) an auto owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or its agencies;

(d) a land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises; and

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

**7.** **"Uninsured Motor Vehicle"** is a vehicle including, a motorcycle or **trailer** of any type, which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of an accident.  This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

The term **"Uninsured Motor Vehicle"** does not include:

(a) an **insured auto**;

(b) an auto owned by or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or its agencies;

(d) a land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises; or

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

**LOSSES WE PAY**

Under this coverage, we will pay damages for **bodily injury** caused by accident which the **insured** is legally

entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** or a **hit-and-run auto** arising out of the ownership, maintenance or use of that motor vehicle.

The amount of the **insured's** recovery for these damages will be determined by agreement between the **insured** or his representative and us.

**EXCLUSIONS**

**WHEN SECTION IV DOES NOT APPLY**

**1.** This coverage does not apply to **bodily injury** to an **insured** if the **insured** or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

**2.** This coverage does not apply to:

(a) a named insured or **relative** residing in his household when **occupying**, or struck as a pedestrian by, an **uninsured** or **underinsured motor vehicle** or motorcycle that is owned by the named **insured**; or

(b) to any **insured occupying** an **uninsured or underinsured motor vehicle** or motorcycle that is owned by such **insured**.

**3.** This coverage will not benefit any worker's compensation insurer, self insurer or disability benefit's insurer.

**4.** We do not cover the United States Government or any of its agencies as an **insured**, a third party beneficiary or otherwise.

**5.** Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

Regardless of the number of autos or **trailers** to which this policy applies:

**1.** The limit of liability for Uninsured Motorists Coverage stated in the declarations for "each person" is the limit of our liability for all damages, including those for care or loss of services, due to **bodily injury** sustained by one person as the result of one accident.

**2.** The limit of liability stated in the declarations applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of one accident.

**3.** When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

If separate policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of our liability for a loss.

**4.** We will not make any payment for **bodily injury** caused by an accident involving an **underinsured motor**

*vehicle* until the bodily injury liability limits under all policies and bonds available to the underinsured motorist and applicable to the accident have been exhausted.

The amount payable under this coverage will be reduced by all amounts:

(a) paid by or for all persons or organizations liable for the injury;

(b) paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or

(c) paid or payable under any workmen's compensation law, or any similar law.

## OTHER INSURANCE

When an *insured occupies* an auto described in this policy, this insurance is primary.

When an *insured occupies* an auto not described in this policy; and

**1.** is named in the policy declarations, this insurance is secondary. If this policy provides secondary coverage, the amount we will pay shall be no more than our pro-rata share of the coverage provided by all available policies providing secondary coverage.

**2.** is not named in the policy declarations, this insurance is excess over any other similar insurance available to the *insured* where he is a named *insured*. If this policy provides excess coverage, the amount we will pay shall be no more than our pro-rata share of the coverage provided by all available policies providing excess coverage.

Except as provided above, if the *insured* has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the highest applicable limits of liability of this insurance and any other such insurance. If the *insured* is *occupying* a motor vehicle or motorcycle owned by that *insured,* only the Uninsured/Underinsured Motorists Coverage applicable to that motor vehicle or motorcycle will apply, and no other policies or provisions of coverage will apply.

## OUR RIGHT OF RECOVERY

When we make a payment under this coverage:

**1.** We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury.* The amount of repayment to us will be less a pro-rata share of the cost of securing such settlement or judgment.

**2.** The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**3.** At our request, the *insured,* in his own name will take appropriate actions as necessary, including instituting action in court, to recover damages from the legally re-

sponsible person or organizations. He will keep us advised of all significant developments in the action. He will prosecute the action to verdict or good faith settlement.

## CONDITIONS

## THE FOLLOWING CONDITIONS APPLY ONLY TO THIS COVERAGE

**1.** NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

(a) the identity of the *insured*;

(b) the time, place and details of the accident; and

(c) the names and addresses of the injured, and of any witnesses.

If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

**2.** ASSISTANCE AND COOPERATION OF THE *INSURED*

After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any person or organization who may be legally responsible. We may require the *insured* to make that person or organization a defendant in any action against us.

**3.** ACTION AGAINST US

We cannot be sued unless the *insured* or his legal representative have fully complied with all the policy terms.

**4.** PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include:

(a) details of the nature and extent of injuries;

(b) treatment; and

(c) other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must at our request authorize us to obtain medical reports and copies of records.

**5.** PAYMENT OF LOSS

Any amount due is payable:

(a) to the *insured* or his authorized representative

(b) if the **insured** is a minor, to his parent or guardian; or

(c) if the **insured** is deceased, to his surviving spouse; otherwise

(d) to a person authorized by law to receive the payment or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

## SECTION V - GENERAL CONDITIONS

**THESE CONDITIONS APPLY TO ALL COVERAGES IN THIS POLICY**

### 1. TERRITORY

This policy applies only to accidents, occurrences or losses during the policy period within:

(a) the United States of America; or
(b) its territories; or
(c) its possessions; or
(d) Puerto Rico; or
(e) Canada; or

when the auto is being transported between ports thereof.

### 2. PREMIUM

When **you** dispose of, acquire ownership of, or replace a **private passenger**, **farm** or **utility auto**, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

### 3. CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement or amendment issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, **your** policy will automatically include the broader coverage when effective in **your** state.

The premium for each auto is based on the information we have in **your** file. **You** agree:

(a) that we may adjust **your** policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) that **you** will cooperate with us in determining if this information is correct and complete.

(c) that **you** will notify us of any changes in this information.

Any calculation or recalculation of **your** premium or changes in **your** coverage will be based on the rules, rates and forms on file, if required, for our use in **your** state.

### 4. ASSIGNMENT

Assignment of interest under this policy will not bind

us without our consent. If **you** die, this policy will cover **your** surviving spouse if covered under the policy prior to **your** death. Until the termination of the policy term, we also cover:

(a) the executor or administrator of **your** estate, but only while acting within the scope of his duties;

(b) any person having proper temporary custody of and operating the **owned auto**, as an **insured**, until the appointment and qualification of the executor or administrator of **your** estate.

### 5. POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and **your** acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire at 12:01 a.m. local time at **your** address stated in the declarations.

### 6. CLAIMS OR SUITS

All claims or suits under Section IV must be brought within three years of the date of accident. However, this does not apply to an underinsured motorist claim if the **insured**:

(a) notifies us within three years of the date of accident, in writing, that he may have a claim for underinsured motorist benefits; and

(b) commences suit under the terms of the policy no more than 180 days from the date of exhaustion of the limits of liability under all automobile bodily injury bonds or automobile insurance policies applicable at the time of the accident by settlements or final judgments after any appeals.

### 7. CANCELLATION BY THE **INSURED**

**You** may cancel this policy by providing notice stating when, after the notice, cancellation will be effective.

If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

### 8. CANCELLATION BY US

We may cancel this policy by mailing to **you**, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

(b) 10 days in advance if the policy has been in effect less than 60 days and the cancellation is for material misrepresentation;

(c) 45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

**9.** CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal policy, we will not cancel except for any of the following reasons:

  (a) **You** do not pay the initial premium on other than a renewal policy or any additional premiums for this policy or fail to pay any premium installment when due to us or our agent.

  (b) We may cancel for revocation of **your** driver's license or motor vehicle registration or that of any other operator who either lives in **your** household or customarily operates an automobile insured under this policy. The revocation must have taken place during the policy period or the 180 days next pending its effective date.

  (c) **You** change **your** principal residence to a state where we do not issue new or renewal automobile insurance policies.

We have the right to modify the Comprehensive Coverage under Section III by including a deductible not to exceed $100.

We may request that **you** have **your owned auto** inspected at one of our authorized sites. If **you** fail to have **your owned auto** inspected as requested, we may cancel Comprehensive, Collision and Rental Reimbursement coverages under Section III.

**10.** RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to **you**, at the address shown in this policy, at least 60 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

  (a) **You** do not pay any premium as we require to renew this policy.

  (b) **You** have informed us or our agent that **you** wish the policy to be cancelled or not renewed.

  (c) **You** do not accept our offer to renew or **you** refuse to provide us with renewal classification and rating information as we may require.

If this policy is written for a term of less than six months, we will not exercise our right to non-renew except:

  (a) as of the end of any six month interval of the original effective date; or

  (b) as of any anniversary of the original effective date.

**11.** OTHER INSURANCE

If other insurance is obtained on **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**12.** DIVIDEND PROVISIONS

**You** are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

**13.** DECLARATIONS

By accepting this policy, **you** agree that:

  (a) the statements in **your** application and in the declarations are **your** agreements and representations;

  (b) this policy is issued in reliance upon the truth of these representations; and

  (c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**14 .** CONCEALMENT OR FRAUD

We may not provide coverage for an **insured** who, whether before or after a loss, has intentionally:

  (a) concealed or misrepresented any material fact or circumstance;

  (b) engaged in fraudulent conduct; or

  (c) made material false statements

relating to this insurance.

**15.** EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**16.** DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an owned auto, any coverage provided by this policy for that vehicle will terminate on the date and at the time **you** do so.

**17.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Connecticut are amended to conform to those statutes.

**SECTION VI - AMENDMENTS AND ENDORSEMENTS**

**SPECIAL ENDORSEMENT - UNITED STATES GOVERNMENT EMPLOYEES**

**A.** Under the Property Damage coverage of Section I, we provide coverage to United States government employees, civilian or military, using

1. Motor vehicles owned or leased by the United states government or any of its agencies, or
2. Rented motor vehicles used for United States government business,

when such use is with the permission of the United States government. Subject to the limits described in paragraph **B** below, we will pay sums *you* are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this coverage:

1. A $100 deductible applies to each occurrence.
2. For vehicles described in **A** .1. above, our liability shall not exceed the lesser of the following:

   a. The *actual cash value* of the property at the time of the occurrence; or
   b. The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c. Two months basic pay of the *insured;* or
   d. The limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2 above, our liability shall not exceed the lesser of the following:

   a. The *actual cash value* of the property at the time of the occurrence; or

   b. The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

   c. The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

J. C. Stewart
Secretary   •   GOVERNMENT EMPLOYEES INSURANCE COMPANY   •   President
GEICO CASUALTY COMPANY
GEICO GENERAL INSURANCE COMPANY
GEICO INDEMNITY COMPANY
HOME OFFICE
5260 Western Avenue
Chevy Chase, Maryland 20815-3799

O. M. Nicely


**GEICO INDEMNITY COMPANY**
Policy Number: 4079-17-12-54

# Automobile Policy Amendment
## Emergency Road Service Coverage

**Your** policy provisions are amended as follows:

**SECTION III**

**PHYSICAL DAMAGE COVERAGES**

**Emergency Road Service**

We will pay reasonable expenses an **insured** incurs for the **owned** or **non-owned auto**, for:

1.  mechanical labor up to one hour at the place of breakdown;
2.  lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3.  if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4.  towing it out if it is stuck on or immediately next to a public highway;
5.  delivery of gas, oil, loaned battery, or change of tire.  WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

**OBTAINING SERVICE UNDER THIS AMENDMENT**

**You** may secure service under this amendment in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, features a toll-free number in which the **insured** calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The **insured** need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the **insured's** expense.

**HIRED SERVICES**

The second method occurs when the **insured** does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

# GEICO

GEICO Indemnity Company
Policy Number: 4079-17-12-54

# Automobile Policy Amendment

## Connecticut

*Your* policy is amended as follows:

### SECTION I-LIABILITY COVERAGES
### DEFINITIONS
The following definitions are revised as follows:

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

11. ***Utility auto*** means a vehicle, other than a ***farm auto***, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

13. ***You*** and ***your*** mean the policyholder named in the declarations or his or her spouse if a resident of the same household.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES
Item **3.** is revised as follows:

3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:
    (a) Before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage;
    (b) After the judgment, and until we pay, offer or deposit in court, the amount due under this coverage.

The following sentence is added after Item **5.**:

> We will upon request by an ***insured,*** provide reimbursement for the following items:

Items **6.**, **7.**, and **8.** are renumbered and revised as follows:

(a) Costs incurred by any ***insured*** for first aid to others at the time of an accident involving an ***owned auto*** or ***non-owned auto.***
(b) Loss of earnings up to $50 a day, but not other income, if we request an ***insured*** to attend hearings and trials.
(c) All reasonable costs incurred by an ***insured*** at our request.

### EXCLUSIONS
### When Section I Does Not Apply
The introduction sentence is revised as follows:

> Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

Exclusion **1.** is replaced with the following:

1. Section I does not apply to any vehicle used to carry persons or property for a compensation or fee, including but not limited to delivery of food or any other products. However, a vehicle used in an ordinary car pool or ride sharing or cost sharing basis is covered.

The following exclusions are added:

15. We do not cover ***bodily injury*** or property damage caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

16. We do not cover any liability assumed under any contract or agreement.

### SECTION II - AUTO MEDICAL PAYMENTS
### EXCLUSIONS
Exclusion **1.** is replaced as follows:

1. There is no coverage for ***bodily injury*** sustained by any occupant of an ***owned auto*** used to carry persons or property for compensation or a fee, including but not limited to delivery of food or any other products. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

The following exclusion is added:

8. We do not cover ***bodily injury*** caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## SECTION III - PHYSICAL DAMAGE COVERAGES

### DEFINITIONS

The following definition is added:

**11.** *Custom parts or equipment* means paint, equipment, devices, accessories, enhancements, and changes other than those which are original manufacturer installed, which:

(a)  Are permanently installed or attached; or

(b)  Alter the appearance or performance of a vehicle.

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or newly acquired vehicle using bolts or brackets, including slide-out brackets.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

Item **2.** is deleted.

### EXCLUSIONS

Exclusion **1.** is replaced as follows:

**1.** An auto used to carry persons or property for compensation or a fee, including but not limited to delivery of food or any other products.  However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

The following exclusions are added:

We do not cover:

**11.** *Loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added.

**12.** Any physical damage to an auto being driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

**13.** Any liability assumed under any contract or agreement.

**14.** *Loss* or damage resulting from:

(a)  The acquisition of a stolen vehicle;

(b)  Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;

(c)  Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or

(d)  The sale of an *owned auto*.

**15.** The destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

### LIMIT OF LIABILITY

Item **2.** is revised as follows:

**2.** Will not exceed the cost to repair or replace the property, or any of its parts, including parts from non-original equipment manufactures, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the loss;

The first paragraph of item **5.** is replaced with the following:

**5.** For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle, unless an endorsement to the policy has been issued.

The following numbered paragraph is added:

**6.** For glass repair or replacement, not to exceed the prevailing competitive price. Although you have the right to choose any glass repair facility or location, the limit of liability for loss to window glass is the cost to:

(a)  Repair; or

(b)  Replace

such glass but will not exceed the prevailing competitive price.  This is the price we can secure from a competent and conveniently located glass repair facility.  At your request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

### CONDITIONS

Condition **4.** ACTION AGAINST US, the following paragraph is added:

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding.  If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days.  *You* may purchase the salvage from us if *you* wish.

The following condition is added:

**10.  ASSIGNMENT**

With respect to Section III, Physical Damages Coverage, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid; moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

## SECTION IV-UNINSURED MOTORIST AND UNDERINSURED MOTORISTS COVERAGE

### DEFINITIONS

The first sentence of definition 7. "Uninsured motor vehicle" is revised as follows:

**7.**  "***Uninsured motor vehicle***" is a motor vehicle including, a motorcycle or trailer of any type, which has no bodily injury bond or insurance policy applicable with liability limits complying with the financial responsibility law of the state in which the insured auto is principally garaged at the time of an accident.

### EXCLUSIONS

The following exclusions are added:

**6.**  This coverage does not apply to any liability assumed under any contract or agreement.

**7.**  This coverage does not apply to damage caused by an insured's participation in or preparation for any racing, speed or demolition contest or stunting activity of any kind, whether or not prearranged or organized.

## SECTION V - GENERAL CONDITIONS

**THESE CONDITIONS APPLY TO ALL COVERAGES IN THIS POLICY**

**8.**  CANCELLATION BY US is replaced with the following:

**8.**  CANCELLATION BY US

We may cancel this policy by mailing to you, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 15 days in advance for non-payment of first premium on a new policy to be retroactive to the effective date of the policy;

(b) 10 days in advance if the proposed cancellation is for non-payment of a premium due other than in (a);

(c) 10 days in advance if the policy has been in effect less than 60 days and the cancellation is for material misrepresentation, and

(d) 45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice.  The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, you may be entitled to a premium refund.  The premium refund, if any, will be computed according to our manuals.  Payment or tender of unearned premium is not a condition of cancellation.

The following condition is added:

**18.  CHOICE OF LAW**

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Connecticut.

We affirm this amendment.

J. C. Stewart
Secretary

O. M. Nicely
President

# GEICO Indemnity

Policy Number: 4079-17-12-54

# Family Automobile Policy Amendment

# Multi-Risk Physical Damage Coverage

*Your* policy provisions are amended as follows:
SECTION III
PHYSICAL DAMAGE COVERAGES

Section III is amended to provide Multi-Risk Physical Damage Coverages. This includes:

1. comprehensive;

2. collision; and

3. mechanical breakdown protection

This amendment is subject to all policy conditions and definitions except as specifically modified below.

The amount of applicable deductible shown in the policy declarations shall apply to each **loss** under the Multi-Risk Coverage. A $50 deductible shall apply to glass breakage without any other damage to the auto unless *you* carry full comprehensive coverage.

## Mechanical Breakdown

We will pay for **loss** caused other than by **collision** or under the comprehensive coverage due to the mechanical breakdown of the **owned auto. Losses** from mechanical breakdown shall not be accumulated to reach the deductible.

## Definitions

For the purposes of this amendment, the following special definitions apply with respect to mechanical breakdown only:

3. "Loss" means all risk of physical damage to the **owned auto** or its equipment.

5. "Owned auto" means any vehicle described in this policy for which a specific premium charge indicates there is coverage. "Owned auto" does not mean:

    a) a newly acquired vehicle; or

    b) a replacement vehicle; or

    c) a **temporary substitute auto.**

## Exclusions

For the purposes of this amendment only, with respect to mechanical breakdown, exclusion 4 is deleted. The following exclusions are added:

10. Oxidation and rust damage are not covered.

11. Damage caused intentionally by **you** or any other person using an **owned auto** with your permission is not covered.

12. **Loss** due to misuse, alteration, or **lack of proper maintenance** is not covered. **Proper maintenance** is the recommended vehicle maintenance as outlined in the owner's manual provided by the manufacturer.

13. Tire wear or other tire damage is not covered.

14. Normal wear and tear is not covered.

15. Routine maintenance services and parts are not covered. This includes; but is not limited to:

    a) engine tune up;
    b) suspension alignment;
    c) wheel balancing;
    d) filters;
    e) lubrication;
    f) engine coolant;
    g) fluids;
    h) spark or glow plugs;
    i) brake pads;
    j) brake linings; and
    k) brake shoes.

16. Any **loss** to the extent covered by warranty, recall or voluntary repair programs is not covered.

17. Any **loss** to a **non-owned auto** or to a **temporary substitute auto** is not covered.

18. Any **loss** to a newly acquired or replacement auto is not covered.

19. Any pre-existing **loss** or damage to any insured auto is not covered.

20. Multi-Risk Coverage will either terminate when the Odometer reading exceeds 100,000 miles or when the age of the vehicle is 7 years old, whichever occurs earlier. The 7 year stipulation will only apply to vehicles that are 1996 model year and later.

## Other Insurance

For the purposes of this amendment only, if **you** have other insurance against a **loss** covered by mechanical breakdown protection, this policy will apply as excess

insurance over such other valid and collectible insur-
ance.

**Conditions**

For the purposes of this amendment only, the following
conditions are added with respect to mechanical break-
down coverage:

We affirm this amendment.

1. Notice

    e) the location of the **_owned auto._**

For this coverage to be applicable, repairs may not be
undertaken prior to obtaining authorization from us.

J. C. Stewart
Secretary   • GEICO INDEMNITY COMPANY •

O. M. Nicely
President

# GEICO

GEICO Indemnity Company
Policy Number: 4079-17-12-54

**AUTOMOBILE POLICY AMENDMENT**

**RENTAL REIMBURSEMENT AMENDMENT**

We agree with you that the policy is amended as follows:

## SECTION III - PHYSICAL DAMAGE COVERAGES

The following coverage is added:

### Coverage-Rental Reimbursement

When there is a **loss** to an **owned auto** for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the **insured** toward costs the **insured** incurs to rent an auto.  Reimbursement will not exceed the limits described in the declarations and payment will be limited to a reasonable and necessary period of time required to repair or replace the **owned auto**. This coverage applies only if:

1. The **owned auto** is withdrawn from use for more than 24 consecutive hours, and
2. The **loss** to the **owned auto** is covered under comprehensive or collision coverage of this policy.

When there is a total theft of the entire auto, we will reimburse the **insured** toward costs the insured incurs to rent an auto, subject to the following limitations:

1. This coverage will reimburse the **insured** for reasonable rental expenses beginning 48 hours after a theft of the entire vehicle covered under the comprehensive coverage of this policy; and

2. This coverage may be used to reimburse reasonable rental expenses in excess of those provided by Section III of the policy if and to the extent the coverage limits under rental reimbursement exceed those provided in Section III of the policy.  In that event, the amount payable under this amendment is the amount by which this coverage exceeds those described in Section III of the policy; and

3. Subject to number 2 above, in no event shall the total amount payable under both this coverage and the supplemental coverage in Section III of the policy exceed the daily limit of coverage provided by this amendment.

Reimbursement for rental charges shall end the earliest of when the **owned auto** has been:

1. Returned to **you**;
2. Repaired;
3. Replaced; or
4. If the **owned auto** is deemed by us to be a total loss, then seventy two (72) hours after we pay the applicable limit of liability under Section III.

No deductible applies to this coverage.

The coverage provided by this amendment is subject to all the provisions and conditions of SECTION III of the policy.

The COMPANY affirms this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

# GEICO Indemnity Company

## ADDITIONAL INSURED ENDORSEMENT

Named Insured and Address:

MARYANN BEVERLY DIONISIO
PO BOX 294
WILTON CT  06897-0294

Effective Date of Endorsement:  04-25-09

Policy Number: 4079-17-12-54

Policy Effective Date: 04-25-09
                              (12:01 A.M. Standard Time)
Policy Expiration Date: 10-25-09
                              (12:01 A.M.)

The policy indicated above includes the Bodily Injury Liability, Property Damage Liability and Uninsured Motorists Coverage limits shown on this endorsement.

Description of Vehicle:  08        BMW              WBAWV53518P078691

Description of Vehicle:

| COVERAGE | LIMITS OF COVERAGE: | | LIMITS OF COVERAGE: | |
|---|---|---|---|---|
| Bodily Injury Liability | $ 250   M   and (each person) | $ 500   M (each occurrence) | $        M  and (each person) | $      M (each occurrence) |
| Property Damage Liability | $ 50M (each occurrence) | | $ (each occurrence) | |
| Uninsured/Underinsured Motorists (Bodily Injury) | $        M  and (each person) | $         M (each occurrence) | $        M  and (each person) | $      M (each occurrence) |
| Underinsured Motorists Conversion | $        M  and (each person) | $         M (each occurrence) | $        M  and (each person) | $      M (each occurrence) |

## ADDITIONAL INSURED

We agree that Bodily Injury Liability, Property Damage Liability, Uninsured/Underinsured Motorist or Underinsured Motorist Conversion coverages provided by this policy also apply with respect to each interest named here as an Additional Insured; but the limit of our liability is not increased by the inclusion of the Additional Insured.

We agree to provide you with written notice of termination in the event this policy becomes cancelled.  Notice provided may be more than ten (10) days, but not less than ten (10) days.

Name and Address of Additional Insured:

BMW FIANCIAL SERVICES
5550 BRITTON PKWY
HILLIARD OH  43026

**GEICO**

GEICO Indemnity Company

Policy Number : 4079-17-12-54

Effective Date: 10-25-08

**Automobile Policy Endorsement**

**INSURANCE FOR CUSTOMIZED VEHICLE EQUIPMENT**

The Policy Number and Effective Date need to be completed only when this endorsement is issued subsequent to preparation of the policy.

Vehicle:   08   BMW      WBAWV53518P078691

In consideration of the physical damage premium paid on the vehicle shown above, we agree with *you* that the policy is amended to afford insurance for direct and accidental loss of, or damage to, the items listed below.

Our limit of liability will not exceed the actual cash value at the time of loss or damage for these listed items.

| | ITEM | VALUE |
|---|---|---|
| 1. | navig system | $875 |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |

- NOTICE -

OUR LIMIT OF LIABILITY FOR THE PAINTING OF ANY VEHICLE, INCLUDING CUSTOM PAINTED VEHICLES SHALL NOT EXCEED $150.00 OVER THE VALUE OF THE MANUFACTURER'S STANDARD PAINT FINISH.

The Deductible Provisions, Conditions, Definitions, Limit of Liability, Other Insurance Provisions and Exclusions applicable to Section III of the Policy apply to this endorsement.

**Note: If you do not carry comprehensive and/or collision on your vehicle(s), this endorsement does not apply.**

This endorsement forms a part of your policy and is effective as of 12:01 A.M. Local Time at your address on the effective date shown above.

_____

Countersigned by Authorized Representative

# GEICO

**GEICO Indemnity Company**

## Automobile Policy Endorsement
### INSURANCE FOR CUSTOMIZED VEHICLE EQUIPMENT

Policy Number: 4079-17-12-54
Effective Date:     10-25-08

The Policy Number and Effective Date need to be completed only when this endorsement is issued subsequent to preparation of the policy.

Vehicle:   08   BMW          WBAWV53518P078691

In consideration of the physical damage premium paid on the vehicle shown above, we agree with *you* that the policy is amended to afford insurance for direct and accidental loss of, or damage to, the items listed below.

Our limit of liability will not exceed the actual cash value at the time of loss or damage for these listed items.

| ITEM | VALUE |
|------|-------|
| 1._____ | _____ |
| 2._____ | _____ |
| 3._____ | _____ |
| 4._____ | _____ |
| 5._____ | _____ |
| 6._____ | _____ |
| 7._____ | _____ |
| 8._____ | _____ |
| 9._____ | _____ |
| 10._____ | _____ |

#### - NOTICE -

OUR LIMIT OF LIABILITY FOR THE PAINTING OF ANY VEHICLE, INCLUDING CUSTOM PAINTED VEHICLES SHALL NOT EXCEED $150.00 OVER THE VALUE OF THE MANUFACTURER'S STANDARD PAINT FINISH.

The Deductible Provisions, Conditions, Definitions, Limit of Liability, Other Insurance Provisions and Exclusions applicable to Section III of the Policy apply to this endorsement.

**Note: If you do not carry comprehensive and/or collision on your vehicle(s), this endorsement does not apply.**

This endorsement forms a part of your policy and is effective as of 12:01 A.M.  Local Time at your address on the effective date shown above.

_____
Countersigned by Authorized Representative

*[    ] For Office Use Only*

*CRUE195*          *84079171254*          */06061*

**GEICO INDEMNITY COMPANY**

### ENDORSEMENT

### LOSS PAYABLE CLAUSE

The Policy Number and Effective Date need be completed only when this endorsement is issued subsequent to preparation of the policy.

Policy Number: 4079-17-12-54

Effective Date:   10-25-08

Any claim under the Physical Damage Coverages of the policy will be paid jointly to the *insured* and the Lienholder in the Declarations.

The Lienholder must notify us if he becomes aware of any increased hazard or change of ownership of the auto or he will lose all of his rights under this policy.

If the *insured* fails to file with us a Proof of *Loss* within 91 days after the loss, the Lienholder must do so within the following 60 days. The policy provisions on time of payment, appraisal and the right to sue us applies both to the Lienholder and the *insured*. We may settle a claim at our option by separate payment to the insured and the Lienholder.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of the payment. If the policy is in effect as to the Lienholder but has been canceled as to the *insured*, the Lienholder must assign the loan to us if we ask and we pay the full amount due.

We will mail notice to the Lienholder at least 10 days before we cancel his interest in the policy.

This endorsement forms a part of your policy.  It is effective at 12:01 A.M. local time at your address on the effective date shown above.

### RETAIN THIS COPY FOR YOUR RECORDS

_____
Countersigned by Authorized Representative

**EXHIBIT D**

# GEICO

geico.com

**TEL:** 1-800-841-3000
**FAX:** 1-716-408-9118

U-31-DP-1 (7-07)

**Policy Number: 4131-51-55-97**

GEICO INDEMNITY COMPANY

ONE GEICO PLAZA, WASHINGTON, DC 20047-0001



**FAMILY AUTOMOBILE POLICY RENEWAL DECLARATIONS**

This is a description of your coverage. Please keep for your records.

Item 1: Named Insured and Address

GREGORY JOHN DIONISIO
100 RICHARDS AVE APT 102
NORWALK CT 06854-1638

E-Mail Address: dionisy65@yahoo.com

| | | |
|---|---|---|
| **Date Issued:  04-20-09** | | |
| Policy Period From   05-28-09 | to   11-28-09 | 12:01 a.m. Local time at the address of the named insured. |

The insured vehicle(s) will be regularly garaged in the town and state shown in Item 1, except as noted in the Vehicle Segment.

**Contract Type:**   A30CT

CONTRACT AMENDMENTS:     ALL VEHICLES - A30CT CRA233CT

UNIT ENDORSEMENTS:       CRA115 (VEH 1); CRA288B (VEH 1); CRA431 (VEH 1); UE316 (VEH 1)

## IMPORTANT MESSAGES

- Please review the reverse side of this page for coverage and discount information.

- The GEICO Property Agency can arrange for your homeowner's, renter's and condominium owner's insurance needs. Just call toll-free at 1-888-306-9500. Refinancing?  Let us provide the new Homeowner's Policy you need.

- Active Duty, Guard, Reserve or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

- Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA and NORTH CAROLINA. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

- Confirmation of coverage has been sent to your lienholder and/or additional insured.

| Date Issued: 04-20-09 | T-T | Policy Number: 4131-51-55-97 |
|---|---|---|

**VEHICLE**

1 00  CHEV      1GNDT13W5Y2391037

**RATED LOCATION**

NORWALK CT 06854

**CLASS**

0 -N -21SMP -L

| COVERAGES | LIMITS OR | | PREMIUMS | |
|---|---|---|---|---|
| Coverage applies where a premium or 0.00 is shown for the vehicle. | DEDUCTIBLES | Vehicle 1 | Vehicle | Vehicle |
| BODILY INJURY LIABILITY | | | | |
| EACH PERSON/EACH OCCURRENCE | $20,000/$40,000 | 336.20 | | |
| PROPERTY DAMAGE LIABILITY | $25,000 | 317.60 | | |
| UNINSURED/UNDERINSURED MOTORISTS NON-STACKED | | | | |
| EACH PERSON/EACH OCCURRENCE | $20,000/$40,000 | 20.00 | | |
| COMPREHENSIVE | $500 DED/FULL GLASS | 111.80 | | |
| COLLISION | $500 DED | 531.40 | | |
| EMERGENCY ROAD SERVICE | FULL | 11.90 | | |
| RENTAL REIMBURSEMENT | $30 PER DAY $900 MAX | 27.60 | | |

SIX MONTH PREMIUM PER VEHICLE:                    $ 1356.50

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

**Premiums for these vehicles are based on the following Discounts and/or Surcharges:**

DISCOUNTS     RENEWAL (VEH 1)

---

Lienholder Vehicle  1          Lienholder Vehicle          Lienholder Vehicle

CHASE AUTO FINANCE

INSURED COPY                                                          PAGE 02

# GEICO

**ONE GEICO PLAZA**
**Washington,  D. C. 20076-0001**
**Telephone: 1-800-841-3000**

# Connecticut Family Automobile Insurance Policy

- Government Employees Insurance Company
- GEICO Casualty Company
- GEICO General Insurance Company
- GEICO Indemnity Company

A-30CT (10-01)

**YOUR POLICY INDEX**

Page

**SECTION I - LIABILITY COVERAGES**

Definition of Terms..................................................3
Losses We Will Pay For You ...............................3
Additional Payments We Will Make For You .......4
    Legal Expenses and Court Costs
    Bail and Appeal Bonds
    First Aid Expenses
Exclusions:  When These Coverages
    Do Not Apply ...................................................4
Persons Insured:  Who Is Covered ........................4
Financial Responsibility Laws ...............................5
Out of State Insurance ...........................................5
Limits of Our Liability For a Loss .........................5
When You Have "Other Insurance" For a Loss......5
Conditions..............................................................5
    Notice:  Reporting Your Loss If Suit is
      Brought Against You
    Your Assistance and Cooperation
    Action Against Us
    Our Rights of Recovery
    Two or More Automobiles Insured
      Under This Policy

**SECTION II - AUTO MEDICAL PAYMENTS**

Definition of Terms..................................................6
Payments We Will Make .........................................6
Exclusions:  When Section II Does Not Apply ......6
Limits of Our Liability For a Loss .........................6
Other Insurance ......................................................6
Conditions..............................................................7
    Notice
    Two or More Autos
    Action Against Us
    Medical Reports - Proof and Payment of Claims

**SECTION III - PHYSICAL DAMAGE COVERAGES**

Definitions of Terms ...............................................7
Losses We Will Pay For You
    Comprehensive Coverage ..................................8
    Collision Coverage ............................................8
Additional Payments We Will Make For You .......8
    Car Rental If Your Car is Stolen
Exclusions:  When These Coverages
    Do Not Apply ...................................................8
Limits of Our Liability For a Loss .........................9
When You Have "Other Insurance" For a Loss......9
Conditions..............................................................9
    Notice:  Reporting Your Loss

Page

Two or More Automobiles Insured Under
  This Policy
Your Assistance and Cooperation
Action Against Us
Your Duties in Event of Loss
Appraisal of Amount of Loss
Payment of Loss
No Benefit to Bailee
Our Rights of Recovery

**SECTION IV - UNINSURED MOTORISTS AND UNDER
INSURED MOTORISTSCOVERAGE**

Definition of Terms...............................................10
Losses We Pay ......................................................11
Exclusions:  When These Coverages
    Do Not Apply .................................................11
Limits of Our Liability For a Loss .......................11
When You Have "Other Insurance" For a Loss......12
Our Right of Recovery ..........................................12
Conditions:............................................................12
    Notice:  Reporting Your Loss
    Your Assistance and Cooperation
    Action Against Us
    Proof of Claim - Medical Reports
    Who Receives "Payment of Losses"

**SECTION V - GENERAL CONDITIONS**

Policy Period - Territory:
    When and Where You Have Coverage ..............13
Premium:  How Adjustments Are Made...............13
Changes to Your Policy ........................................13
Assignment of Your Interest in This
    Policy to Others ...............................................13
Claims or Suits
Cancellation of the Policy: ...................................13
    By You
    By Us
    By Us Is Limited
Renewal of Your Policy .........................................14
Other Insurance ....................................................14
Dividend Provisions .............................................14
Declarations:  Your Agreements ..........................14
Concealment or Fraud ..........................................14
Examination Under Oath.......................................14
Disposal of Vehicle ..............................................14
Terms of Policy Conformed To Statutes ...............14

**SECTION VI AMENDMENTS AND ENDORSEMENTS**

Special Endorsement - United States Government
Employees..............................................................15

Whenever, "he," "his," "him," or "himself" appears in this policy, *you* may read "she," "her," "hers," or "herself."

## AGREEMENT

**We, the Company named in the declarations attached to this policy, make this agreement with *you*. Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:**

## SECTION I - LIABILITY COVERAGES

*Your* **Protection Against Claims From Others Bodily Injury Liability and Property Damage Liability**

### DEFINITIONS

The words in italics in Section I of this policy are defined below.

**1.** **"*Auto business*"** means the business of:

    (a) selling;
    (b) repairing;
    (c) servicing;
    (d) storing;
    (e) transporting; or
    (f) parking of autos.

**2.** **"*Bodily injury*"** means bodily injury to a person, and resulting sickness, disease or death.

**3.** **"*Farm auto*"** means a truck type vehicle with a load capacity of 2000 pounds or less, not used commercially other than for farming.

**4.** **"*Insured*"** means a person or organization described under "persons insured."

**5.** **"*Non-owned auto*"** means an automobile or *trailer* not owned by or furnished for the regular use of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

**6.** **"*Owned auto*"** means:

    (a) a vehicle described in this policy for which a premium charge is shown for these coverages;
    (b) a *trailer* owned by *you*;
    (c) **a private passenger**, *farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease of six months or more during the policy period if

        (i) it replaces an *owned auto* as defined in (a) above; or
        (ii) we insure all *private passenger*, *farm* and *utility autos* owned or leased by *you* on the date of acquisition, and *you* ask us to add it to the policy within 30 days from the date of acquisition.

    (d) a *temporary substitute auto*.

**7.** **"*Private passenger auto*"** means a four-wheel private passenger, station wagon or jeep-type auto.

**8.** **"*Relative*"** means a person related to *you* who resides in *your* household with *you*.

**9.** **"*Temporary substitute auto*"** means an automobile or *trailer*, not owned by *you*, temporarily used with the permission of the owner. This auto must be used as a substitute for the *owned auto* or *trailer* which is out of normal use because of its:

    (a) breakdown;
    (b) repair;
    (c) servicing;
    (d) loss; or
    (e) destruction.

**10.** **"*Trailer*"** means a trailer designed to be towed by a *private passenger auto*, if not being used for business or commercial purposes with a vehicle other than a *private passenger*, *farm* or *utility auto* .

**11.** **"*Utility auto*"** means a vehicle, other than a *farm auto*, with a load capacity of 2000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

**12.** **"*War*"** means:

    (a) armed conflict between nations, whether or not declared;
    (b) civil war;
    (c) insurrection;
    (d) rebellion; or
    (e) revolution.

**13.** **"*You*"** and **"*your*"** means:

    (a) the "named insured" shown in the declarations; and
    (b) the "named insured's" spouse if a resident of the same household.

### LOSSES WE WILL PAY FOR YOU UNDER SECTION I

We will pay damages an *insured* becomes legally obligated to pay because of:

**1.** *bodily injury*, sustained by a person, and

**2.** damage to or destruction of property including its loss of use.

The *bodily injury* or damage or destruction of property must arise out of the:

    (a) ownership;
    (b) maintenance; or
    (c) use (including loading and unloading)

of the *owned* auto or a *non-owned* auto.

We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER SECTION I**

**1.** All investigative and legal costs we incur.

**2.** All court costs charged to an **insured** in a covered law suit.

**3.** All interest accruing on that amount of a judgment which is within our limit of liability, accruing after the entry of judgment, until we have paid, offered, or deposited in court that part of a judgment not exceeding the limit of our liability.

**4.** Costs for appeal bonds in a suit we appeal or costs for bonds to release attachments. At **your** request we will arrange for the issuance of a bond to release an attachment. The face amount of these bonds may not exceed the applicable limit of liability.

**5.** Costs for bail bonds paid for an **insured** due to traffic law violations arising out of the use of an insured auto. We will not pay more than $250 per bail bond.

**6.** Costs incurred by an **insured** for first aid to others at the time of an accident which involved an insured auto.

**7.** Loss of earnings up to $50 a day, but not other income, if an **insured** attends hearings and trials at our request.

**8.** All reasonable costs incurred by an **insured** at our request.

**EXCLUSIONS**

**WHEN COVERAGE UNDER SECTION I DOES NOT APPLY**

We will not defend any suit for damage if one or more of the exclusions listed below applies:

**1.** Section I does not apply to any vehicle used to carry passengers or goods for hire. A vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** **Bodily injury** or property damage caused intentionally by or at the direction of an **insured** is not covered.

**3.** We do not cover **bodily injury** or property damage that is insured under a nuclear liability policy.

**4.** **Bodily injury** or property damage arising from the operation of farm machinery is not covered.

**5.** **Bodily injury** to an **insured's** employee arising out of and in the course of employment by an **insured** is not covered.

We cover **bodily injury** to an **insured's** domestic employee unless benefits are payable or are required to be provided under a worker's or workmen's compensation law.

**6.** We do not cover any employee for **bodily injury** to a fellow employee sustained in the course of his employment if worker's compensation or other similar coverage

is available. This does not apply to **you** and any of **your** fellow employees.

**7.** An **owned auto** while used by a person (other than **you,** any partner agent or employee of **yours** or any **relative**) when he is employed or otherwise engaged in the **auto business** is not covered if the accident arises out of that business.

**8.** We do not cover a **non-owned auto** while maintained or used by a person while he is employed or otherwise engaged in (1) any **auto business** or (2) any other business or occupation of any **insured** if the accident arises out of that business or occupation, except a **non-owned private passenger auto** used by **you**, **your** chauffeur or domestic servant, while engaged in such other business.

We do cover a **non-owned private passenger auto** used by **you**, **your** chauffeur or domestic servant, while engaged in the business of an **insured.**

**9.** We do not cover damage to:

(a) property owned or transported by an **insured**; or
(b) property rented to or in the care of an **insured** other than a residence or private garage.

**10.** We do not cover an auto **you** acquire during the policy period if **you** have purchased other liability insurance for it.

**11.** We do not cover:

(a) the United States of America or any of its Agencies;
(b) any person, including **you**, if protection is afforded under the provisions of the Federal Tort Claims Act.

**12.** We do not cover **bodily injury** to any passenger while occupying a motorcycle.

**13.** We do not cover **bodily injury** or property damage that results from the operation of a **non-owned auto** or **temporary substitute auto** that is designed for use principally off public roads that is not registered for use on public roads.

**14.** We do not cover punitive or exemplary damages awarded due to a loss where the **insured** was legally intoxicated or under the influence of illegal narcotics or narcotics used illegally by the **insured** at the time of loss.

**PERSONS INSURED**

**WHO IS COVERED BY SECTION I**

The following are **insureds** with regard to an **owned auto:**

**1.** **you** and **your relatives** unless any such person is excluded by endorsement;

**2.** persons using the auto with **your** permission. The actual use must be within the scope of that permission;

**3.** any other person or organization for his or its liability because of acts or omissions of an *insured* under 1 or 2 above.

The following are *insureds* with regard to an *non-owned auto:*

**1.** (a) *You;*

(b) *Your relatives* when using a *private passenger auto*, *utility auto*, *farm auto*, or *trailer*.

Such use by *you or your relatives* must be with the permission, or reasonably believed to be with the permission, of the owner and within the scope of that permission.

**2.** A person or organization, not owning or hiring the auto, regarding his or its liability because of acts or omissions of an *insured* under 1 above.

The limits of liability stated in the declarations are the most we will pay regardless of the number of *insureds* involved in the occurrence.

**FINANCIAL RESPONSIBILITY LAWS**

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees repay us for payment which we would not have had to make except for this agreement.

**OUT OF STATE INSURANCE**

When this policy applies to the operation of a motor vehicle outside of *your* state, we will to increase *your* coverages to the extent required of out-of-state motorists by local law. This added coverage will be reduced to the extent that *you* are covered by other insurance. No person can be paid more than once for any item of loss.

**LIMITS OF LIABILITY**

Regardless of the number of autos or *trailers* to which this policy applies:

**1.** The limit of bodily injury liability shown in the declarations for "each person" is the most we will pay for all damages, including those for care and loss of services, because of *bodily injury* to one person in of one occurrence.

**2.** Subject to the "each person" limit in 1. above, the limit of bodily injury liability shown in the declarations for "each occurrence" is the most we will pay for all damages, including those for care and loss of services, because of *bodily injury* to two or more persons in any one occurrence.

**3.** The limit of property damage liability for "each occurrence" shown in the declarations is the most we will pay for all damages to property of one or more persons or organizations as the result of any one occurrence. The damages, including loss of its use, must arise out of in-

jury to or destruction of that property.

**OTHER INSURANCE**

If the *insured* has other insurance for a loss covered by Section I, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or use of a vehicle *you* do not own shall be excess over any other valid and collectible insurance. However, this coverage is primary if the *insured* is operating an auto with dealer's or repairer's plates which is loaned to him while his auto is in the dealer's or repairer's shop for service or repair.

**CONDITIONS**

**THE FOLLOWING CONDITIONS APPLY TO SECTION I**

**1.** NOTICE

As soon as possible after an occurrence, we or our authorized agent must be notified. We may ask that the notice be in writing. The notice must provide the following details:

(a) the identity of the *insured*;
(b) the time, place and details of the occurrence;
(c) the names and addresses of the injured, and
(d) the names and addresses of any witnesses;
(e) the names of the owners of any damaged property; and
(f) the description and location of the damaged property.

The *insured*, must promptly send us any legal papers he receives if a claim or suit is brought against him.

**2.** ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and help us, if we ask:

(a) in the investigation of the claim;
(b) in making settlements;
(c) in the conduct of suits; and
(d) in enforcing any right of contribution or indemnity against any person or organization legally responsible for the *bodily injury* or property damage; and
(e) at trials and hearings;
(f) in securing and giving evidence; and
(g) by obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

**3.** ACTION AGAINST US

We cannot be sued:

(a) unless the *insured* has complied with all the policy's terms and conditions; and
(b) until the amount of the *insured's* obligation to pay has been finally determined, either:

(i) by a final judgment against the *insured* after actual trial; or

(ii) by written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or his estate will not relieve us of our duties.

**4.** OUR RIGHTS OF RECOVERY

When payment is made under this policy, we will be entitled to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue or otherwise recover the loss from anyone else who may be held responsible.

**5.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

**SECTION II - AUTO MEDICAL PAYMENTS**

*This section applies only if a premium is shown on the policy declarations for "Auto Medical Payments" coverage.*

**DEFINITIONS**

The definitions of terms shown under Section I apply to this Coverage. In addition, under this Coverage, **"occupying"** means:

(a) in;
(b) upon;
(c) entering into; or
(d) alighting from.

**PAYMENTS WE WILL MAKE**

Under this Coverage, we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary:

(a) medical, surgical, x-ray services;
(b) dental services;
(c) prosthetic devices;
(d) ambulance services;
(e) hospital services; and
(f) funeral services.

The one year limit does not apply to funeral services.

This Coverage applies to:

**1.** *you* and each *relative* who sustains *bodily injury* caused by accident:

(a) while *occupying* the *owned auto*; or
(b) while *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to use the auto and the use is within the scope of that permission; or
(c) when struck as a pedestrian by an auto or *trailer*.

**2.** any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being used by *you*, a resident of *your* household, or other persons with *your* permission.

**EXCLUSIONS**

**When Section II Does Not Apply**

**1.** There is no coverage for *bodily injury* sustained by any occupant of an *owned auto* used to carry passengers or goods for hire. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** There is no coverage for an *insured* while *occupying* a vehicle located for use as a residence or premises.

**3.** *You* and *your relatives* are not covered for *bodily injury* sustained while *occupying* or when struck by:

(a) a farm-type tractor or other equipment designed for use principally off public roads, while not upon public roads; or
(b) a vehicle operated on rails or crawler-treads.

**4.** There is no coverage for persons employed in the *auto business*, if the accident arises out of that business and if benefits are required to be provided under a worker's compensation law.

**5.** There is no coverage for *bodily injury* sustained due to *war.*

**6.** The United States of America or any of its Agencies are not covered as an *insured,* a third party beneficiary, or otherwise.

**LIMIT OF LIABILITY**

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains *bodily injury* in one accident. This applies regardless of the number of persons insured or the number of autos or *trailers* to which this policy applies.

**OTHER INSURANCE**

If the *insured* has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide to a person who sustains *bodily injury* while *occupying* a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

This insurance shall be primary over any other health insurance as defined in the Connecticut General Statutes, including, but not limited to, coverage provided by plans subject to ERISA.

**CONDITIONS**

The following conditions apply to this Coverage:

**1.** NOTICE

As soon as possible after an accident, written notice must be given us or our authorized agent stating:

(a) the identity of the *insured*;
(b) the time, place and details of the accident; and
(c) the names and addresses of the injured, and of any witnesses.

**2.** TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each.  An auto and an attached *trailer* are considered to be one auto.

**3.** ACTION AGAINST US

Suit will not lie against us unless the *insured* has fully complied with all the policy terms.

**4.** MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required.  After each request from us, he will give us written authority to obtain medical reports and copies of records.

The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the *insured*.

**SECTION III - PHYSICAL DAMAGE COVERAGES**

*Your* Protection for Loss or Damage To *Your* Car
**DEFINITIONS**

The following definitions of terms under Section I apply to Section III also.

1. *"Auto business"*
2. *"Farm auto"*
3. *"Private Passenger auto"*
4. *"Relative"*
5. *"Temporary substitute auto"*
6. *"Utility auto"*
7. *"You"* and *"your"*
8. *"War"*

Under this Section, the following special definitions apply:

**1.** *"Actual Cash Value"* is the replacement cost of the auto or property less *depreciation* or *betterment*.

**2.** *"Betterment"* is improvement of the auto or property to value greater than its pre-loss condition.

**3.** *"Collision"* means *loss* caused by:

(a) upset of the covered auto; or
(b) its impact with another object, including an attached vehicle.

4. *"Comprehensive"* means *loss* caused other than by *collision* and includes but is not limited to the following causes:

a. missiles;
b. falling objects;
c. fire;
d. lightning;
e. theft;
f. larceny;
g. explosion;
h. earthquake;
i. windstorm;
j. hail;
k. water;
l. flood;
m. malicious mischief;
n. vandalism;
o. riot;
p. civil commotion; or
q. colliding with a bird or animal.

**5.** *"Depreciation"* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

**6.** *"Insured"* means:

(a) regarding the *owned auto*:

(i) *you* and *your relatives;*
(ii) a person or organization maintaining, using or having custody of the auto with *your* permission; of his use must be within the scope of that permission.

(b) regarding a *non-owned auto*; *you* and *your relatives* using the auto, if the actual operation or use is with or reasonably believed to be with the permission of the owner.  The use must be within the scope of that permission.

**7.** *"Loss"* means direct and accidental loss of or damage to:

(a) the auto;
(b) its equipment; or
(c) other insured property.

8. **"Non-owned auto"** means a **private passenger auto**, **utility auto**, **farm auto**, or **trailer** not owned by or furnished for regular use or by **you** or **your relatives**, except a **temporary substitute auto**. **You** or **your relative** must be using the auto or **trailer** within the scope of permission given by its owner.  An auto rented or leased for more than 30 days will be considered as furnished for regular use.

9. **"Owned auto"** means:

(a) a vehicle described in this policy for which a premium charge is shown for these coverages;

(b) a **trailer** owned by **you**;

(c) a **private passenger**, **farm** or **utility auto**, ownership of which **you** acquire during the policy period or for which **you** enter into a lease of six months or more during the policy period, if

(i) it replaces an **owned auto** as described in (a) above, or

(ii) we insure all **private passenger**, **farm**, **utility autos** and **trailers** owned or leased by **you** on the date of acquisition.  **You** must ask us to add it to the policy within 30 days from the date of acquisition.

(d) a **temporary substitute auto**.

10. **"Trailer"** means a trailer designed for use with a **private passenger auto** and not used as a:

(a) home;
(b) office;
(c) store;
(d) display; or
(e) passenger trailer.

**LOSSES WE WILL PAY FOR *YOU***

**Comprehensive (Excluding Collision)**

1. We will pay for each **loss,** less the applicable deductible, caused other than by **collision** to the **owned** or **non-owned auto**. This includes glass breakage.

No deductible will apply to **loss** caused by smoke, smudge, or damage sustained while the vehicle is being transported on any conveyance.

At the option of the **insured,** breakage of glass caused by **collision** may be paid under the collision coverage, if included in the policy.

2. We will pay, up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects, due to:

(a) fire;
(b) lightning;
(c) flood;
(d) falling objects;
(e) earthquake;
(f) explosion; or
(g) theft of the entire auto.

The property must by owned by **you** or a **relative** and must be in or upon an **owned auto**.

No deductible will apply to **loss** from fire or lightning.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

**Collision**

1. We will pay for **collision loss** to the **owned** or **non-owned auto** for the amount of each **loss** less the applicable deductible.

2. We will pay up to $200 per occurrence, less the applicable deductible, for **loss** to personal effects due to a **collision**.  The property must be owned by **you** or a **relative**, and must be in or upon an **owned auto**.

3. **Losses** arising out of a single occurrence shall be subject to no more than one deductible.

**ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES**

1. We will reimburse the **insured** for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by Comprehensive Coverage under this policy has been reported to us and the police.  Reimbursement ends when the auto is returned to use or we pay for the **loss**.

Reimbursement will not exceed $25.00 per day nor $750.00 per **loss**.

2. We will pay for **loss** to any of the following equipment (including **loss** to accessories and antenna):

(a) car phone;
(b) citizen's band radio;
(c) two-way mobile radio;
(d) scanning monitor receiver; or
(e) device designed for the recording and/or reproduction of sound.

We will pay only if the equipment at the time of a **loss:**

(a) is permanently installed in or upon an **owned auto;** and
(b) that vehicle is insured under the appropriate coverage.

3. We will pay general average and salvage charges for which the **insured** becomes legally liable when the auto is being transported.

**EXCLUSIONS**

**WHEN THE PHYSICAL DAMAGE COVERAGES DO NOT APPLY**

We do not cover:

1. An auto used to carry passengers or goods for hire.  However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

**2.** *Loss* due to *war*.

**3.** *Loss* to a *non-owned auto* when used by the *insured* in the *auto business*.

**4.** *Loss* caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.

**5.** Tires when they alone are damaged by *collision*.

**6.** *Loss* due to radioactivity.

**7.** *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound.

**8.** *Loss* to any radar or laser detector.

**9.** *Trailers* when used for business or commercial purposes with vehicles other than *private passenger*, *farm* or *utility autos*.

**10.** *Loss* to an *owned auto* or *non-owned auto* that results from destruction or confiscation by governmental or civil authorities because *you*, a *relative* or anyone else in possession or custody of that vehicle was engaged in illegal activities.

**LIMIT OF LIABILITY**

The most we will pay for *loss*:

**1.** is the *actual cash value* of the property at the time of the *loss*;

**2.** will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality; and will not include compensation for any diminution in the property's value that is claimed to result from the *loss;*

**3.** to personal effects arising out of one occurrence is $200;

**4.** to a *trailer* not owned by *you* is $500;

**5.** for custom options is limited to the *actual cash value* of equipment, furnishings or finishing (including paint) installed in or upon the auto only by the auto factory or an authorized auto dealer and included in the purchase price of the auto.

"*Actual cash value*" of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* covered by Section III, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**
**THE FOLLOWING CONDITIONS APPLY TO SECTION III**

**1.** NOTICE

As soon as possible after a *loss*, we or our authorized agent must be notified. We may ask that the notice be in writing. The notice must provide the following details:

(a) the identity of the *insured;*
(b) a description of the auto or *trailer*;
(c) the time, place and details of the *loss*; and
(d) the names and addresses of any witness.

In case of theft, the *insured* must promptly notify the police.

**2.** TWO OR MORE AUTOS

If this policy covers two or more *autos* or *trailers*, the limit of coverage and any deductibles apply separately to each.

**3.** ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and help us, if we ask:

(a) in the investigation of the *loss*;
(b) in making settlements;
(c) in the conduct of suits; and
(d) in enforcing any right of recovery against any legally responsible person or organization;
(e) in attending trials and hearings;
(f) in securing and giving evidence; and
(g) in obtaining the attendance of witnesses.

**4.** ACTION AGAINST US

We cannot be sued:

(a) unless the policy terms have been complied with; and
(b) until 30 days after proof of loss is filed and the amount of *loss* is determined.

**5.** *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

(a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. We will pay reasonable expenses incurred for this protection.
(b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably need.
(c) If we ask, exhibit the damaged property.

**6.** APPRAISAL

If we and the *insured* do not agree on the amount of *loss*, either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser.

The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of *loss*. We and the *insured* will each pay his chosen appraiser. Expenses of the appraisal and umpire will be shared equally by us and the *insured*.

We will not waive our rights by any of our acts relating to appraisal.

**7.** PAYMENT OF *LOSS*

We may at our option:

(a) pay for the *loss*; or

(b) repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations. We will do so at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value. There will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

**8.** NO BENEFIT TO BAILEE

The insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

**9.** OUR RIGHTS OF RECOVERY

When payment is made under this policy, we will be entitled to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

**SECTION IV - UNINSURED MOTORIST AND UNDER-INSURED MOTORISTS COVERAGE.**

**Protection For *You* and *Your* Passengers For Injuries Caused By Uninsured/Underinsured and Hit-and-Run Motorists**

**DEFINITIONS**

The definitions of terms for Section I apply to Section IV, except for the following special definitions:

**1. "*Hit-and-Run Auto*"** is a motor vehicle:

(a) causing *bodily injury* to an *insured* through physical contact with him or with an auto he is *occupying* at the time of the accident. If there is no physical contact with the hit-and-run auto, the *insured* must show, by an independent and disinterested witness that the *bodily injury* was the result of the actions of an unidentified motorist; and

(b) whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

(1) reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;

(2) files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and

(3) makes available for inspection, at our request, the auto *occupied* by the *insured* at the time of the accident.

**2. "*Insured*"** means:

(a) *you;*

(b) *your* spouse if a resident of *your* household;

(c) any *relative* of (a) or (b) above who resides with *you* and who does not own a motor vehicle that is required to be insured provided this coverage shall be primary for any *relative* while *occupying* an auto described in the declarations and covered by the bodily injury liability coverage of this policy;

(d) any other person while *occupying* an *insured auto*; or

(e) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), (c) and (d) above; or

(f) any employee of the named insured while *occupying* an *insured auto* in the course of employment.

If there is more than one *insured,* our limits of liability will not be increased.

**3. "*Insured Auto*"** is an auto:

(a) described in the declarations and covered by the bodily injury liability coverage of this policy;

(b) which is a *temporary substitute auto*; or

(c) operated by *you* or *your* spouse if a resident of the same household.

But the term "*insured auto*" does not include:

(i) an auto used to carry passengers or goods for hire, except in a car pool;

(ii) an auto being used without the owner's permission; or

(iii) under subparagraphs (b) and (c) above, an auto owned by or furnished for the regular use of an *insured*.

**4. "*Occupying*"** means:

(a) in;

(b) upon;

(c) entering into; or

(d) alighting from.

**5. "*State*"** includes:

(a) the District of Columbia;

(b) the territories and possessions of the United States; and

(c) the Provinces of Canada.

**6.** **"Underinsured Motor Vehicle"** means a motor vehicle including a motorcycle for which the total limits of all bodily injury liability insurance policies or bonds applicable at the time of the accident are less than the limits of insurance under this coverage.

The term **"Underinsured Motor Vehicle"** does not include:

(a) an **insured auto**;

(b) an auto owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or its agencies;

(d) a land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises; and

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

**7.** **"Uninsured Motor Vehicle"** is a vehicle including, a motorcycle or **trailer** of any type, which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of an accident.  This term also includes an auto whose insurer is or becomes insolvent or denies coverage.

The term **"Uninsured Motor Vehicle"** does not include:

(a) an **insured auto**;

(b) an auto owned by or operated by a self insurer with in the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

(c) an auto owned by the United States of America, any other national government, a **state**, or a political sub-division of any such government or its agencies;

(d) a land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises; and

(e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

**LOSSES WE PAY**

Under this coverage, we will pay damages for **bodily injury** caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** or a **hit-and-run auto** arising out of the ownership, maintenance or use of that motor vehicle.

The amount of the **insured's** recovery for these damages will be determined by agreement between the **insured** or his representative and us.

**EXCLUSIONS**

**WHEN SECTION IV DOES NOT APPLY**

**1.** This coverage does not apply to **bodily injury** to an **insured** if the **insured** or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

**2.** This coverage does not apply to:

(a) a named insured or **relative** residing in his household when **occupying**, or struck as a pedestrian by, an **uninsured** or **underinsured motor vehicle** or motorcycle that is owned by the named **insured**; or

(b) to any **insured occupying** an **uninsured or underinsured motor vehicle** or motorcycle that is owned by such **insured**.

**3.** This coverage will not benefit any worker's compensation insurer, self insurer or disability benefit's insurer.

**4.** We do not cover the United States Government or any of its agencies as an **insured**, a third party beneficiary or otherwise.

**5.** Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

Regardless of the number of autos or **trailers** to which this policy applies:

**1.** The limit of liability for Uninsured Motorists Coverage stated in the declarations for "each person" is the limit of our liability for all damages, including those for care or loss of services, due to **bodily injury** sustained by one person as the result of one accident.

**2.** The limit of liability stated in the declarations applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of **bodily injury** sustained by two or more persons as the result of one accident.

**3.** When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

If separate policies with us are in effect for **you** or any person in **your** household, they may not be combined to increase the limit of our liability for a loss.

**4.** We will not make any payment for **bodily injury** caused by an accident involving an **underinsured motor**

*vehicle* until the bodily injury liability limits under all policies and bonds available to the underinsured motorist and applicable to the accident have been exhausted.

The amount payable under this coverage will be reduced by all amounts:

    (a) paid by or for all persons or organizations liable for the injury;

    (b) paid or payable under the Bodily Injury Coverage or Medical Payments Coverage of this policy; or

    (c) paid or payable under any workmen's compensation law, or any similar law.

**OTHER INSURANCE**

When an *insured occupies* an auto described in this policy, this insurance is primary.

When an *insured occupies* an auto not described in this policy; and

**1.** is named in the policy declarations, this insurance is secondary. If this policy provides secondary coverage, the amount we will pay shall be no more than our pro-rata share of the coverage provided by all available policies providing secondary coverage.

**2.** is not named in the policy declarations, this insurance is excess over any other similar insurance available to the *insured* where he is a named *insured*. If this policy provides excess coverage, the amount we will pay shall be no more than our pro-rata share of the coverage provided by all available policies providing excess coverage.

Except as provided above, if the *insured* has other similar insurance available to him and applicable to the accident, the damages will be deemed not to exceed the highest applicable limits of liability of this insurance and any other such insurance. If the *insured* is *occupying* a motor vehicle or motorcycle owned by that *insured,* only the Uninsured/Underinsured Motorists Coverage applicable to that motor vehicle or motorcycle will apply, and no other policies or provisions of coverage will apply.

**OUR RIGHT OF RECOVERY**

When we make a payment under this coverage:

**1.** We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury.* The amount of repayment to us will be less a pro-rata share of the cost of securing such settlement or judgment.

**2.** The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**3.** At our request, the *insured,* in his own name will take appropriate actions as necessary, including instituting action in court, to recover damages from the legally re-

sponsible person or organizations. He will keep us advised of all significant developments in the action. He will prosecute the action to verdict or good faith settlement.

**CONDITIONS**

**THE FOLLOWING CONDITIONS APPLY ONLY TO THIS COVERAGE**

**1.** NOTICE

As soon as possible after an accident, notice must be given us or our authorized agent stating:

    (a) the identity of the *insured*;

    (b) the time, place and details of the accident; and

    (c) the names and addresses of the injured, and of any witnesses.

If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

**2.** ASSISTANCE AND COOPERATION OF THE *INSURED*

After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any person or organization who may be legally responsible. We may require the *insured* to make that person or organization a defendant in any action against us.

**3.** ACTION AGAINST US

We cannot be sued unless the *insured* or his legal representative have fully complied with all the policy terms.

**4.** PROOF OF CLAIM - MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include:

(a) details of the nature and extent of injuries;

(b) treatment; and

(c) other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by us when and as often as we may reasonably require. Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must at our request authorize us to obtain medical reports and copies of records.

**5.** PAYMENT OF LOSS

Any amount due is payable:

(a) to the *insured* or his authorized representative

(b) if the **insured** is a minor, to his parent or guardian; or

(c) if the **insured** is deceased, to his surviving spouse; otherwise

(d) to a person authorized by law to receive the payment or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

**SECTION V - GENERAL CONDITIONS**

**THESE CONDITIONS APPLY TO ALL COVERAGES IN THIS POLICY**

**1.**  TERRITORY

This policy applies only to accidents, occurrences or losses during the policy period within:

(a) the United States of America; or
(b) its territories; or
(c) its possessions; or
(d) Puerto Rico; or
(e) Canada; or

when the auto is being transported between ports thereof.

**2.**  PREMIUM

When **you** dispose of, acquire ownership of, or replace a **private passenger**, **farm** or **utility auto**, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

**3.**  CHANGES

The terms and provisions of this policy cannot be waived or changed, except by an endorsement or amendment issued to form a part of this policy.

We may revise this policy during its term to provide more coverage without an increase in premium.  If we do so, **your** policy will automatically include the broader coverage when effective in **your** state.

The premium for each auto is based on the information we have in **your** file. **You** agree:

(a) that we may adjust **your** policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed.

(b) that **you** will cooperate with us in determining if this information is correct and complete.

(c) that **you** will notify us of any changes in this information.

Any calculation or recalculation of **your** premium or changes in **your** coverage will be based on the rules, rates and forms on file, if required, for our use in **your** state.

**4.**  ASSIGNMENT

Assignment of interest under this policy will not bind

us without our consent.  If **you** die, this policy will cover **your** surviving spouse if covered under the policy prior to **your** death.  Until the termination of the policy term, we also cover:

(a) the executor or administrator of **your** estate, but only while acting within the scope of his duties;

(b) any person having proper temporary custody of and operating the **owned auto**, as an **insured**, until the appointment and qualification of the executor or administrator of **your** estate.

**5.**  POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations.  But, it may be continued by our offer to renew and **your** acceptance by payment of the required renewal premium prior to the expiration date.  Each period will begin and expire at 12:01 a.m. local time at **your** address stated in the declarations.

**6.**  CLAIMS OR SUITS

All claims or suits under Section IV must be brought within three years of the date of accident.  However, this does not apply to an underinsured motorist claim if the **insured**:

(a) notifies us within three years of the date of accident, in writing, that he may have a claim for underinsured motorist benefits; and

(b) commences suit under the terms of the policy no more than 180 days from the date of exhaustion of the limits of liability under all automobile bodily injury bonds or automobile insurance policies applicable at the time of the accident by settlements or final judgments after any appeals.

**7.**  CANCELLATION BY THE **INSURED**

**You** may cancel this policy by providing notice stating when, after the notice, cancellation will be effective.

If this policy is cancelled, **you** may be entitled to a premium refund.  The premium refund, if any, will be computed according to our manuals.

**8.**  CANCELLATION BY US

We may cancel this policy by mailing to **you**, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due;

(b) 10 days in advance if the policy has been in effect less than 60 days and the cancellation is for material misrepresentation;

(c) 45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, **you** may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. Payment or tender of unearned premium is not a condition of cancellation.

**9.** CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal policy, we will not cancel except for any of the following reasons:

(a) **You** do not pay the initial premium on other than a renewal policy or any additional premiums for this policy or fail to pay any premium installment when due to us or our agent.

(b) We may cancel for revocation of **your** driver's license or motor vehicle registration or that of any other operator who either lives in **your** household or customarily operates an automobile insured under this policy. The revocation must have taken place during the policy period or the 180 days next pending its effective date.

(c) **You** change **your** principal residence to a state where we do not issue new or renewal automobile insurance policies.

We have the right to modify the Comprehensive Coverage under Section III by including a deductible not to exceed $100.

We may request that **you** have **your owned auto** inspected at one of our authorized sites. If **you** fail to have **your owned auto** inspected as requested, we may cancel Comprehensive, Collision and Rental Reimbursement coverages under Section III.

**10.** RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to **you**, at the address shown in this policy, at least 60 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

(a) **You** do not pay any premium as we require to renew this policy.

(b) **You** have informed us or our agent that **you** wish the policy to be cancelled or not renewed.

(c) **You** do not accept our offer to renew or **you** refuse to provide us with renewal classification and rating information as we may require.

If this policy is written for a term of less than six months, we will not exercise our right to non-renew except:

(a) as of the end of any six month interval of the original effective date; or

(b) as of any anniversary of the original effective date.

**11.** OTHER INSURANCE

If other insurance is obtained on **your** insured auto, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

**12.** DIVIDEND PROVISIONS

**You** are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

**13.** DECLARATIONS

By accepting this policy, **you** agree that:

(a) the statements in **your** application and in the declarations are **your** agreements and representations;

(b) this policy is issued in reliance upon the truth of these representations; and

(c) this policy, along with the application and declaration sheet, embodies all agreements relating to this insurance. The terms of this policy cannot be changed orally.

**14 .** CONCEALMENT OR FRAUD

We may not provide coverage for an **insured** who, whether before or after a loss, has intentionally:

(a) concealed or misrepresented any material fact or circumstance;

(b) engaged in fraudulent conduct; or

(c) made material false statements

relating to this insurance.

**15.** EXAMINATION UNDER OATH

The **insured** or any other person seeking coverage under this policy must submit to examination under oath by any person named by us when and as often as we may require.

**16.** DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an owned auto, any coverage provided by this policy for that vehicle will terminate on the date and at the time **you** do so.

**17.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of Connecticut are amended to conform to those statutes.

**SECTION VI - AMENDMENTS AND ENDORSEMENTS**

**SPECIAL ENDORSEMENT - UNITED STATES GOVERNMENT EMPLOYEES**

**A.** Under the Property Damage coverage of Section I, we provide coverage to United States government employees, civilian or military, using

1. Motor vehicles owned or leased by the United states government or any of its agencies, or
2. Rented motor vehicles used for United States government business,

when such use is with the permission of the United States government. Subject to the limits described in paragraph **B** below, we will pay sums **you** are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this coverage:

1. A $100 deductible applies to each occurrence.
2. For vehicles described in **A** .1. above, our liability shall not exceed the lesser of the following:

   a. The **actual cash value** of the property at the time of the occurrence;  or
   b. The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c. Two months basic pay of the **insured;** or
   d. The limit of Property Damage liability coverage stated in the declarations.

3. For vehicles described in A.2 above, our liability shall not exceed the lesser of the following:

   a. The **actual cash value** of the property at the time of the occurrence; or

   b. The cost to repair or replace the property, or any of its parts with other of like kind and quality; or

   c. The limit of Property Damage liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

J. C. Stewart
Secretary

O. M. Nicely
President

GOVERNMENT EMPLOYEES INSURANCE COMPANY
GEICO CASUALTY COMPANY
GEICO GENERAL INSURANCE COMPANY
GEICO INDEMNITY COMPANY
HOME OFFICE
5260 Western Avenue
Chevy Chase, Maryland 20815-3799



# Automobile Policy Amendment
## Emergency Road Service Coverage

Policy Number:

*Your* policy provisions are amended as follows:

**SECTION III**

**PHYSICAL DAMAGE COVERAGES**

**Emergency Road Service**

We will pay reasonable expenses an *insured* incurs for the *owned* or *non-owned auto*, for:

1.  mechanical labor up to one hour at the place of breakdown;
2.  lockout services up to $100 per lockout if keys to the auto are lost, broken or accidentally locked in the auto;
3.  if it will not run, towing to the **nearest** repair facility where the necessary repairs can be made;
4.  towing it out if it is stuck on or immediately next to a public highway;
5.  delivery of gas, oil, loaned battery, or change of tire.  WE DO NOT PAY FOR THE COST OF THE GAS, OIL, LOANED BATTERY, OR TIRE(S).

**OBTAINING SERVICE UNDER THIS AMENDMENT**

*You* may secure service under this amendment in the following manner:

**SIGN AND DRIVE**

The first method, called sign and drive, features a toll-free number in which the **insured** calls a GEICO Emergency Road Service representative who will dispatch a service vendor. Upon verification of Emergency Road Service (ERS) coverage, reasonable and necessary charges for covered services provided will be automatically billed to the Company by the Service vendor. The *insured* need only sign a receipt at the time of service which authorizes the company to directly pay the service vendor. Any additional mileage, other fees not specifically addressed above, or lockout services in excess of $100 will be at the *insured's* expense.

**HIRED SERVICES**

The second method occurs when the *insured* does not use the sign and drive feature described above and hires services without prior approval from the Emergency Road Service (ERS) Department. Upon verification of Emergency Road Service (ERS) coverage, for covered services provided, up to a limit of $50 will apply. Lockout services are limited to $100. Requests for reimbursement must be accompanied by an original itemized receipt and must be submitted within 60 days of service.

There will be a limit of one reimbursement per disablement.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

*00001000001*

# GEICO

GEICO Indemnity Company
Policy Number:

# Automobile Policy Amendment

## Connecticut

*Your* policy is amended as follows:

### SECTION I-LIABILITY COVERAGES

### DEFINITIONS

The following definitions are revised as follows:

3. ***Farm auto*** means a truck type vehicle with a gross vehicle weight of 15,000 pounds or less, not used for commercial purposes other than farming.

11. ***Utility auto*** means a vehicle, other than a ***farm auto***, with a gross vehicle weight of 15,000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

13. ***You*** and ***your*** mean the policyholder named in the declarations or his or her spouse if a resident of the same household.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

Item **3.** is revised as follows:

3. Interest calculated on that part of a judgment that is within our limit of liability and accruing:

    (a) Before the judgment, where owed by law, and until we pay, offer or deposit in court the amount due under this coverage;

    (b) After the judgment, and until we pay, offer or deposit in court, the amount due under this coverage.

The following sentence is added after Item **5.**:

    We will upon request by an ***insured,*** provide reimbursement for the following items:

Items **6.**, **7.**, and **8.** are renumbered and revised as follows:

    (a) Costs incurred by any ***insured*** for first aid to others at the time of an accident involving an ***owned auto*** or ***non-owned auto.***

    (b) Loss of earnings up to $50 a day, but not other income, if we request an ***insured*** to attend hearings and trials.

    (c) All reasonable costs incurred by an ***insured*** at our request.

### EXCLUSIONS

### When Section I Does Not Apply

The introduction sentence is revised as follows:

    Section I does not apply to any claim or suit for damage if one or more of the exclusions listed below applies.

Exclusion **1.** is replaced with the following:

1. Section I does not apply to any vehicle used to carry persons or property for a compensation or fee, including but not limited to delivery of food or any other products. However, a vehicle used in an ordinary car pool or ride sharing or cost sharing basis is covered.

The following exclusions are added:

15. We do not cover ***bodily injury*** or property damage caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

16. We do not cover any liability assumed under any contract or agreement.

### SECTION II - AUTO MEDICAL PAYMENTS

### EXCLUSIONS

Exclusion **1.** is replaced as follows:

1. There is no coverage for ***bodily injury*** sustained by any occupant of an ***owned auto*** used to carry persons or property for compensation or a fee, including but not limited to delivery of food or any other products. However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

The following exclusion is added:

8. We do not cover ***bodily injury*** caused by an auto driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

## SECTION III - PHYSICAL DAMAGE COVERAGES

### DEFINITIONS

The following definition is added:

11. ***Custom parts or equipment*** means paint, equipment, devices, accessories, enhancements, and changes other than those which are original manufacturer installed, which:

    (a)  Are permanently installed or attached; or
    (b)  Alter the appearance or performance of a vehicle.

This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the ***owned auto*** or newly acquired vehicle using bolts or brackets, including slide-out brackets.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGE COVERAGES

Item **2.** is deleted.

### EXCLUSIONS

Exclusion **1.** is replaced as follows:

1. An auto used to carry persons or property for compensation or a fee, including but not limited to delivery of food or any other products.  However, a vehicle used in an ordinary car pool on a ride sharing or cost sharing basis is covered.

The following exclusions are added:

We do not cover:

11. ***Loss*** for ***custom parts or equipment*** unless the existence of those ***custom parts or equipment*** has been previously reported to us and an endorsement to the policy has been added.

12. Any physical damage to an auto being driven in or preparing for any racing, speed or demolition contest or stunting activity of any nature, whether or not prearranged or organized.

13. Any liability assumed under any contract or agreement.

14. ***Loss*** or damage resulting from:

    (a)  The acquisition of a stolen vehicle;
    (b)  Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c)  Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or
    (d)  The sale of an ***owned auto.***

15. The destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by ***you***, a ***relative*** or a permissive user of the vehicle in illegal activity.

### LIMIT OF LIABILITY

Item **2.** is revised as follows:

2. Will not exceed the cost to repair or replace the property, or any of its parts, including parts from non-original equipment manufactures, with other of like kind and quality and will not include compensation for any diminution in the property's value that is claimed to result from the loss;

The first paragraph of item **5.** is replaced with the following:

5. For ***custom parts or equipment*** is limited to the ***actual cash value*** of the ***custom parts or equipment***, not to exceed the ***actual cash value*** of the vehicle, unless an endorsement to the policy has been issued.

The following numbered paragraph is added:

6. For glass repair or replacement, not to exceed the prevailing competitive price. Although you have the right to choose any glass repair facility or location, the limit of liability for loss to window glass is the cost to:

    (a)  Repair; or
    (b)  Replace

such glass but will not exceed the prevailing competitive price.  This is the price we can secure from a competent and conveniently located glass repair facility.  At your request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

### CONDITIONS

Condition **4.** ACTION AGAINST US, the following paragraph is added:

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding.  If ***you*** ask us immediately after a ***loss*** to preserve the salvage for inspection, we will do so for a period not to exceed 30 days.  ***You*** may purchase the salvage from us if ***you*** wish.

The following condition is added:

**10.   ASSIGNMENT**

With respect to Section III, Physical Damages Coverage, an Assignment of interest under this policy will not bind us without our consent. Any nonconforming assignment shall be void and invalid; moreover, the assignee of a nonconforming assignment shall acquire no rights under this contract and we shall not recognize any such assignment.

**SECTION IV-UNINSURED MOTORIST AND UNDERINSURED MOTORISTS COVERAGE**

**DEFINITIONS**

The first sentence of definition 7. "Uninsured motor vehicle" is revised as follows:

**7.**   "***Uninsured motor vehicle***" is a motor vehicle including, a motorcycle or trailer of any type, which has no bodily injury bond or insurance policy applicable with liability limits complying with the financial responsibility law of the state in which the insured auto is principally garaged at the time of an accident.

**EXCLUSIONS**

The following exclusions are added:

**6.**   This coverage does not apply to any liability assumed under any contract or agreement.

**7.**   This coverage does not apply to damage caused by an insured's participation in or preparation for any racing, speed or demolition contest or stunting activity of any kind, whether or not prearranged or organized.

**SECTION V - GENERAL CONDITIONS**

**THESE CONDITIONS APPLY TO ALL COVERAGES IN THIS POLICY**

**8.**   CANCELLATION BY US is replaced with the following:

**8.**   CANCELLATION BY US

We may cancel this policy by mailing to you, at the address shown in this policy, written notice stating when the cancellation will be effective.

We will mail this notice:

(a)   15 days in advance for non-payment of first premium on a new policy to be retroactive to the effective date of the policy;

(b)   10 days in advance if the proposed cancellation is for non-payment of a premium due other than in (a);

(c)   10 days in advance if the policy has been in effect less than 60 days and the cancellation is for material misrepresentation, and

(d)   45 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice.  The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is cancelled, you may be entitled to a premium refund.  The premium refund, if any, will be computed according to our manuals.  Payment or tender of unearned premium is not a condition of cancellation.

The following condition is added:

**18.**   CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Connecticut.

We affirm this amendment.

J. C. Stewart
Secretary

O. M. Nicely
President

**GEICO**

# AUTOMOBILE POLICY AMENDMENT

Policy Number:

## COMPREHENSIVE COVERAGE NON-DEDUCTIBLE SAFETY GLASS BREAKAGE

We agree with *you* that under the Comprehensive Coverage, no deductible applies to breakage of safety glass.

WE affirm this amendment.

J. C. Stewart
Secretary     GEICO INDEMNITY COMPANY     President

O.  M. Nicely

CRA-288b (11-88)

AUTOMOBILE POLICY AMENDMENT

## RENTAL REIMBURSEMENT AMENDMENT

Policy Number: _____

"We agree with you that the policy is amended as follows:"

SECTION III- Physical Damage Coverages

The following coverage is added:

Coverage - Rental Reimbursement

When there is a loss to an owned auto for which a specific premium charge indicates that rental reimbursement coverage is afforded:

We will reimburse the insured for expense the insured incurs to rent a similar auto. Reimbursement will not exceed $25 per day nor $750.00 per loss and payment will be limited to that period of time reasonably required to repair or replace the owned auto. This coverage applies only if:

1.   the owned auto is withdrawn from use for more than 24 consecutive hours, and

2.   the loss to the owned auto is covered under comprehensive or collision coverage of this policy.

This coverage does not apply when there is a total theft of the entire auto unless and until:

1.   the period of time reasonably required to repair or replace the stolen auto exceeds 30 days; and

2.   only if the additional benefits provided under the supplementary benefits of the policy have been exhausted.

No deductible applies to this coverage.

The coverage provided by this amendment is subject to all the provisions and conditions of SECTION III of the policy.

THE COMPANY affirms this amendment.

R. A. Phillips
Secretary        GEICO Indemnity Company

O. M. Nicely
President

CRA-431 (3-92)

DATE OF NOTIFICATION
NOTICE OF COVERAGE - LIENHOLDER - AUTOMOBILE PHYSICAL DAMAGE INSURANCE

POLICYHOLDER

POLICY NUMBER
POLICY TERM                          TO                                                                    -

U-32 (1-85)

Any claim under the Physical Damage Coverages of the policy will be paid jointly to the *insured* and the Lienholder in the Declarations.

The Lienholder must notify us if he becomes aware of any increased hazard or change of ownership of the auto or he will lose all of his rights under this policy.

If the *insured* fails to file with us a Proof of *Loss* within 91 days after the loss, the Lienholder must do so within the following 60 days.  The policy provisions on time of payment, appraisal and the right to sue us applies both to Lienholder and the *insured*.  We may settle a claim at our option by separate payment to the *insured* and the Lienholder.

Whenever we pay the Lienholder, we shall be subrogated to the Lienholder's rights of recovery to the extent of the payment. If the policy is in effect as to the Lienholder but has been canceled as to the *insured*, the Lienholder must assign the loan to us if we ask and we pay the full amount due.

We will mail notice to the Lienholder at least 10 days before we cancel his interest in the policy.